No. 14792

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

KEITH REYNOLDS,

                Plaintiff and Appellant,

        vs.

BURLINGTON NORTHERN, INC.,
a corporation,

                Defendants and Respondents.

---

Appeal from:   District Court of the Eleventh Judicial District,
               In and For the County of Lincoln,
               Honorable Robert Holter, Judge presiding.

Counsel of Record:

    For Appellant:

        Murphy, Robinson, Heckathorn and Phillips, Kalispell,
         Montana
        I. James Heckathorn argued, Kalispell, Montana

    For Respondents:

        Kroschel, Peterson and Koolen, Billings, Montana
        K. Kent Koolen argued, Billings, Montana

---

                        Submitted: March 27, 1980

                         Decided: DEC 9 - 1980

Filed: DEC 9 - 1980

_Thomas J. Kearney_
                                    Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Plaintiff, Keith Reynolds, while employed by Ksanka Lumber Company, was severely injured when a string of Burlington Northern railroad cars suddenly moved down a siding and struck a cable over which he was straddled. He sued Burlington Northern for damages, and appeals from an order of the Lincoln County District Court directing a verdict in favor of the railroad.

The pleadings are imprecise and confusing, but it appears that plaintiff sued the railroad on two theories: First, that he was a business invitee in his relationship with the railroad and that as such, the railroad owed him the duty to provide a safe place to work. Second, that the railroad violated the Federal Safety Appliance Act, and that he was a member of the protected class under the Act.

It is not entirely clear what the railroad's defenses were. It appears, however, that the railroad conceded that plaintiff was a business invitee, but denied that the railroad owed him as such, the duty to provide him with a safe place to work. It appears that the railroad had a two-pronged defense in relation to the Safety Appliance Act. First, the railroad contended that because plaintiff was not on the main line of the railroad and because the facilities were leased to the Ksanka Lumber Company, plaintiff was not entitled to protection under the Act. Second, assuming application of the Act to this case, the railroad alleged that it was entitled to assert the defenses of assumption of risk and contributory negligence, and pleaded both defenses as affirmative defenses.

We first set forth the facts of the accident before

again venturing into the procedural entanglement at the end of trial which led to this appeal.

Plaintiff, at the time of his injuries, was a 45-year old employee of Ksanka Lumber Company, who worked at a woodchip-loading facility at Fortine, Montana, on land leased by Ksanka Lumber Company from the defendant railroad. (We note, parenthetically, and will have more to say of this later, that Ksanka Lumber Company is a wholly-owned subsidiary of Plum Creek Lumber Company, and that Plum Creek Lumber Company is in turn, a wholly-owned subsidiary of the defendant railroad.) On October 3, 1974, at approximately 8:00 a.m., railroad employees placed a string of five empty cars against a sixth car already placed on a side track adjacent to Ksanka's woodchip-loading facility. None of the brakes on the five cars were set.

When plaintiff came to work at 4:00 p.m., the first of the six cars had already been spotted at the loading chute. This car was approximately 150 feet from the remaining empty railroad cars. Plaintiff finished filling the partially-loaded car with chips about 8:30 p.m. and rode it down the incline to a spot where it would be rerouted by the railroad. He then walked up the incline to the remaining string of empty cars. He testified that he climbed the ladder on the second car in the string and tightened and secured its brakes before uncoupling the lead car. Upon uncoupling the lead car, he rode it down to the loading area to load it with woodchips.

To facilitate even loading of woodchips, an electric car puller is provided for the loading operation. This puller moves a car up and down the track to allow woodchips leaving the chute to fill the car evenly. After stopping the lead car at the chip loader, the plaintiff attached the car

puller cable to the end of the car. While doing so, he straddled the car puller cable and turned his back to the string of cars which were further down the track. The string of empty cars suddenly began rolling and struck the cable over which he was straddled. The collision propelled plaintiff into the air and his leg was badly broken.

Plaintiff's leg remained in a cast for two and a half years and during this time, surgery was performed several times. He returned to work in April 1977, but immediately experienced additional problems with the foot on his injured leg. His physical problems prevented him from continuing to work at his old job and from performing any duties which required movement of his leg or foot. Plaintiff sued the railroad in December 1975.

The procedural problems in relation to the substantive basis for recovery, had their beginning in the pleadings and carried over into the pretrial order. In his complaint, as a separate allegation of negligence, plaintiff alleged that defendant owed him the duty of providing him with a safe place to work. He also enumerated several specifications of negligence whereby the railroad had caused his injuries. The complaint contained no allegation that plaintiff was a business invitee of the defendant railroad. Without specifying how the Safety Appliance Act applied to him, plaintiff also alleged that the railroad had violated the Act and was thus responsible for his injuries.

We cannot tell from the District Court file whether the trial court held a pretrial conference, although there is a pretrial order signed by the trial court and approved by counsel for both sides. The imprecise pleadings were carried over into the pretrial order. The order, signed so as to supplement the pleadings (see Rule 16, M.R.Civ.P.) set

-4-

forth the issues of fact and law as follows:

1. Was the defendant negligent in which negligence was the proximate cause of plaintiff's injury?

2. Was the plaintiff contributorily negligent?

3. Did plaintiff assume the risk of injury?

4. Did defendant violate the Safety Appliance Act?

5. The extent and amount of plaintiff's injury and damage.

Neither the District Court file nor the trial transcript, reveals any significant rulings or discussions on questions of law. Rather, it appears that no rulings were made until the end of the trial when the court and counsel were settling jury instructions.

Plaintiff offered several instructions relating to his negligence theory of liability. Several contained language that the plaintiff was a business invitee of the defendant railroad and that as such the railroad owed plaintiff a duty to provide him with a safe place to work. The railroad's position on the business invitee status of plaintiff is not entirely clear, but there is no doubt that the railroad asserted that it did not owe a duty to provide him with a safe place to work. The railroad argues that such duty applies only to an employer-who must provide its employees with a safe place to work--and that plaintiff was not an employee of the railroad. All of plaintiff's offered instructions were laced with language stating that the railroad owed him a duty to provide a safe place to work.

We cannot determine the precise rulings of the trial court on the questions of law presented by these offered instructions. For example, the record does not disclose whether the trial court ruled only that the railroad did not owe plaintiff a duty to provide him with a safe place to

work, or whether it also ruled that plaintiff was not a business invitee. Neither plaintiff's counsel nor defense counsel made any effort to obtain a definitive ruling. The consequence is that the trial court refused almost all of the plaintiff's offered instructions on his negligence theory of liability. Because he was effectively left without any instructions supporting his negligence theory of liability, plaintiff's counsel told the trial court that it might as well direct a verdict in favor of the railroad. The defendant railroad also renewed its motion for a directed verdict. The trial court, accordingly, directed a verdict against plaintiff on the negligence theory.

Similar problems cropped up with relation to plaintiff's theory of recovery under the Safety Appliance Act. The record is equally clouded. The parties did not request the trial court to enter any preliminary rulings as to whether the Act applied in this case, and if applicable, the nature and extent of its application. Thus, the problems first arose during settlement of jury instructions relating to the Act. Plaintiff offered several instructions relating to his interpretation of the Act as applied to this case, and the trial court refused most of them. Unfortunately, the record does not tell us the particulars of why the trial court considered the instructions to be in error or inapplicable.

Plaintiff offered an instruction defining causation under the Act, but which used the language contained in the Federal Employers' Liability Act (§§ 51 thru 60; in particular, see § 51.) Another paragraph of the same instruction stated that contributory negligence was not a defense to an action under the Safety Appliance Act. Although the trial court refused this instruction, we cannot determine whether he ruled that both paragraphs were in

error, or whether the causation language or contributory negligence statement was in error. The plaintiff made no effort to obtain a clarifying ruling to determine precisely what was wrong with his offered instruction. The record is further confused by the fact that the defendant railroad offered an instruction under the Act containing language that contributory negligence was a defense, and plaintiff's counsel did not object. It makes little sense for plaintiff to offer an instruction stating that contributory negligence is not a defense and then to fail to object to the defendant's offered instruction stating that contributory negligence is a defense, to an action under the Act. (We note here that the railroad asserts that it did not offer an instruction containing assumption or risk as a defense because it was satisfied that the evidence rendered this defense inapplicable.)

Because the trial court refused most of plaintiff's offered instructions defining and applying the Safety Appliance Act, plaintiff asserted that he could not argue a violation of the Act to the jury, and therefore requested that the trial court also enter a directed verdict on this theory of liability. Defense counsel agreed, and a directed verdict was accordingly entered.

Plaintiff's counsel later moved for a new trial and alleged on several grounds, that the trial court had improperly construed and applied the law. We cannot determine if briefs were supplied the court in support of this motion. In any event, it appears that the motion was orally argued, and that within a few days the trial court directed the clerk to enter a minute entry stating that the motion for a new trial was denied. Reasons for denial were not stated. Plaintiff's appeal followed.

Plaintiff states the issues as follows: (1) Was Reynolds a business invitee on premises of Burlington Northern? (2) Did Burlington Northern owe Reynolds a duty of providing him with a safe place to work? (3) Does the Federal Safety Appliance Act apply to Reynolds? (4) Is contributory negligence a defense under the Act? (5) Did the Court err in directing its verdict against Reynolds?

The railroad, on the other hand, states the issues in the following language: (1) Was the plaintiff improperly precluded from submitting the issue of "premises liability" to the jury? (2) Was the plaintiff improperly precluded from submitting the issue of Safety Appliance Act liability to the jury? (3) Did the Court commit reversible error by directing a verdict against the plaintiff?

It is clear that the parties cannot agree on the issues and that the trial record does not demonstrate a well-prepared and well-presented case by counsel for either side. Although we cannot say that this case would not ultimately have been appealed had it gone to the jury, we have no doubt that it would be here in a different procedural context if counsel for both sides had paid closer attention to the law and to drafting their proposed jury instructions. We note also that the trial court should not be faulted by the plaintiff for directing a verdict when it was the plaintiff who requested the trial court to do so. On the other hand, had the trial court been more careful in its rulings with relation to the proposed instructions, and had the parties insisted on careful rulings, we would be in a better position to handle the substantive issues without first sorting out the procedural problems which led to the results at the trial court level.

Because of the nature of the rulings affecting

plaintiff's offered instructions as to his negligence theory of liability, we cannot tell why the trial court effectively took the negligence theory away from the jury. Nor can we determine the trial court's rulings in relation to the application and scope of the Safety Appliance Act. Nonetheless, we determine that we must decide whether, under the facts of this case, the defendant railroad had the duty to provide plaintiff with a safe place to work. Although it appears that the railroad concedes the right of the plaintiff to sue under the Safety Appliance Act, we must also determine whether the railroad has available to it the defenses of assumption of risk and contributory negligence. We discuss first the application and scope of the Safety Appliance Act.

APPLICATION OF THE FEDERAL SAFETY APPLIANCE ACT: Procedural Background

In that portion of the pretrial order setting forth plaintiff's contentions, plaintiff simply alleged that "defendant violated the Safety Appliance Act (45 U.S.C. § 1-16) in providing a car with a defective handbrake." Defendant, on the other hand, had several contentions in the pretrial order pertaining to its defense of the case. It alleged first that the cars were not in use on defendant's line at the time of the accident. Second, it alleged that plaintiff's injuries were not caused by a defective handbrake or, by a failure of a handbrake to perform properly and efficiently on the occasion in question when used in a normal, ordinary and proper operation. Third, it argued that plaintiff's injuries were caused by his negligence in failing to properly set a handbrake or by improperly setting the handbrakes on the remaining cars. Fourth, it alleged that plaintiff had assumed the risk of

his injuries (although this contention was withdrawn at the time jury instructions were settled.) Fifth, the railroad asserted that there is no evidence that any of the handbrakes on any of the cars were defective.

Initially, we note that the defendant did not assert during settlement of jury instructions, nor does it assert here, that the Safety Appliance Act is inapplicable because the railroad cars were not in use on defendant's line at the time plaintiff sustained his injuries. We assume, therefore, that defendant has abandoned this contention. Furthermore, in Jenkins v. Chicago & Southeastern Illinois Railroad (1972), 5 Ill.App.3d 954, 284 N.E.2d 392, a case remarkably similar to the facts here, the Court ruled that the cars, although on a siding, that was leased to the plaintiff's employer, were in operation on defendant's railroad line. We hold also, that defendant cannot defeat application of the Act because the cars were on a siding, even though the carloading operations on the siding were handled by Ksanka Lumber Company.

THE FEDERAL SAFETY APPLIANCE ACT: Substantive Application

Plaintiff's offered instructions applying the Safety Appliance Act, stated that proof of a violation of the Act, together with a causal relationship between the violation and the injuries sustained, is sufficient to impose liability on the railroad. They further provided that the defenses of contributory negligence and assumption of risk were not available to the railroad. The definition of causation was that which is provided for in the Federal Employers' Liability Act--and we shall have more to say of this later. The railroad also offered several instructions defining the Act, but provided that contributory negligence is a defense even if a violation of the Act is proved. (As

we previously stated, the railroad eliminated its assumption of risk defense from its offered instructions because it believed that as a matter of _evidence_, the defense was inapplicable.)

The trial court refused plaintiff's offered instructions and approved the defendant's instructions. Contributory negligence was thus a defense under the Act. Only two other instructions had direct application to the Act. The first (and a proper instruction) defined inefficient brake and defective brake; and the second (which also was proper) defined the terms inefficient and ineffective, but further stated that the terms were not synonymous.

The trial court approved several more of defendant's offered instructions that apply to plaintiff's theories of recovery; but the instructions do not specify that they are intended to apply either to the negligence theory of recovery, or to the Safety Appliance Act theory of recovery, or to both. The danger, of course, is that the jury, without being properly instructed, could improperly apply the instructions without the necessary designation.

One of the instructions defined reasonable care, which could apply only to plaintiff's common law negligence action. A second defined the term negligence, which again could only be applied to plaintiff's negligence theory. A third instruction defined the term contributory negligence, but did not attempt to state whether it applied to either or both of plaintiff's theories of recovery. A fourth instruction also defined contributory negligence, and is similarly defective for a failure to designate which theory it applied to. A fifth instruction defined the term proximate cause, and although properly applicable to both theories of recovery, failed to contain language telling the

-11-

jury that the definition did apply to both theories. We are thus left with a series of instructions that are woefully inadequate, even assuming that the trial court had properly ruled on the application and scope of the Safety Appliance Act. If the case had gone to the jury, and the plaintiff received an adverse jury verdict, we would be compelled to reverse for the reason that the jury was improperly instructed.

We next proceed to a discussion of the substantive provisions of the Federal Safety Appliance Act as they apply to this case.

We have no doubt that the plaintiff is a member of the class which can invoke the provisions of the Federal Safety Appliance Act, 45 U.S.C. §§ 1 thru 46. Section 11 provides in part:

"It shall be unlawful for any common carrier
. . . to haul, or permit to be hauled or used
on its line, any car . . . not equipped with
. . . efficient hand brakes . . ."

Section 13 of the Act provides for criminal penalties for any violation.

Although the Act itself does not create a cause of action in favor of anyone, it has been given effect through civil suits under the Federal Employers' Liability Act (45 U.S.C. §§ 51 thru 60) in the case of railroad employees, and by suits in state courts invoking state law for nonrailroad employees. In Coray v. Southern Pac. Co. (1949), 335 U.S. 520, 522-523, 69 S.Ct. 275, 276, 93 L.Ed.2d 208, 210, the United States Supreme Court long ago stated:

". . . this Act, fairly interpreted, must be
held to protect all who need protection from
dangerous results due to maintenance or
operation of congressionally prohibited
defective appliances."

In Boyer v. Atchison, Topeka and Santa Fe Railway Co. (1967), 38 Ill.2d 31, 230 N.E.2d 173, the Illinois Supreme

-12-

Court held that a railroad passenger could invoke the protection of the Act, and furthermore, that the defense of assumption of risk was not available to the railroad. In Jenkins, supra, following the lead set forth in Boyer, the Illinois Appellate Court declared that a nonrailroad employee working on the railroad's siding, could invoke the protection of the Act, and furthermore, that the defense of contributory negligence was not available to the railroad. It is thus clear to us that the plaintiff here can invoke the protection of the Act; and it is equally clear that the railroad cannot assert the defenses of assumption of risk and contributory negligence.

Because it is a federal Act, federal court decisions necessarily define the substantive provisions. The U.S. Supreme Court has declared that the Act imposes absolute liability that is not in any way dependent on the law of negligence. In O'Donnell v. Elgin J. & E. Ry. Co. (1949), 338 U.S. 384, 390, 70 S.Ct. 200, 204, 94 L.Ed. 187, the Court stated:

> ". . . this Court early swept all issues of negligence out of cases under the Safety Appliance Act. For reasons set forth at length in our books, the Court held that a failure of equipment to perform as° required by the Safety Appliance Act is in itself an actionable wrong, in no way dependent upon negligence and for the proximate results of which there is liability--a liability that cannot be escaped by proof of care or diligence. (Citing cases.)"

For reasons that are not entirely clear, however, the U.S. Supreme Court has also declared that whether the railroad can assert contributory negligence or assumption of risk as defenses in a case involving a nonrailroad employee, depends entirely on state law rather than federal law. The most recent case adhering to this interpretation is Crane v. Cedar Rapids & Iowa Railway Co. (1969), 395 U.S.

-13-

164, 89 S.Ct. 1706, 23 L.Ed.2d 176. In <u>Crane</u>, the Court upheld an Iowa Supreme Court decision holding that one who brings suit under the Safety Appliance Act must prove (under Iowa law) that he was free from contributory negligence. In declaring, however, that a nonemployee could not invoke the same protections under the Federal Employers' Liability Act to which a railroad employee is entitled, the majority stated:

> "We recognize the injustice of denying recovery to a nonemployee which would not be denied to an employee performing the same task in the same manner as did petitioner. But it is for Congress to amend the statute to prevent such injustice. It is not permitted the Court to rewrite the statute." 395 U.S. at 167.

Justice Black, joined by Chief Justice Warren and Justice Douglas, dissented, arguing that a nonemployee under the Safety Appliance Act should have the same protections as those given a railroad employee who invokes the Act as a basis of predicating civil liability.

Because the Safety Appliance Act creates absolute liability not dependent upon the law of negligence, we must decide this issue on the basis of whether we permit the defenses of assumption of risk and contributory negligence where suit is brought under a state statute that imposes absolute liability. In Pollard v. Todd (1966), 148 Mont. 171, 418 P.2d 869, a case brought under the Montana Scaffolding Act, we ruled that liability is established where it is proved that a statute has been violated and there is a proximate cause connection between the violation and the resulting injuries. We ruled, furthermore, that in such a case, the defenses of assumption of risk and contributory negligence are not available to one who has responsibility under the Scaffolding Act. We would be inconsistent in interpreting absolute liability statutes if

-14-

we were to permit the railroad to invoke the defenses of assumption of risk and contributory negligence under the Safety Appliance Act but to disallow the defenses under the Montana Scaffolding Act. In either case, the principle is the same, and the principle should be consistently applied.

We are not alone in holding that the defenses of assumption of risk and contributory negligence are not available to the railroad where sued by a plaintiff who invokes the provisions of the Safety Appliance Act. In Boyer, supra, the Illinois Supreme Court determined that the actionable wrong under the Act is the failure of the equipment to perform as required under the Act, and that once the violation is proved, the plaintiff need only prove the causal relationship between the violation and the injuries sustained. In ruling that the defense of assumption of risk was not available under Illinois law, the court stated:

> "Under such a policy which imposes an absolute duty to provide for public safety it would be incongruous to allow the doctrine of assumption of risk to be employed by the defendant to avoid the responsibility to one for whose benefit the statute was enacted." 230 N.E.2d at 178.

Not to be denied, two years later, a defendant railroad asserted the defense of contributory negligence in a suit brought by a nonrailroad employee pursuant to the Safety Appliance Act. The Illinois Appellate Court, following the lead in Boyer, held that contributory negligence is not a defense to a suit brought pursuant to the Act. Jenkins, supra. The Court stated:

> "Because the action is one to enforce an absolute liability, the applicable state law is that which deals with those types of actions. It is elementary that contributory negligence, a concept of the law of negligence, is not an applicable defense against one seeking to enforce an absolute liability." 284 N.E.2d at 400.

-15-

The court in Jenkins also laid to rest any assumption that the defenses would be available to the railroad where sued by a nonrailroad employee:

"Implicit in the defendant's argument is the contention that the fact that plaintiff is a nonemployee of the defendant railroad changes his status with respect to the available defenses. Defendant has not suggested, however, that plaintiff is not within the class of those intended to be protected by the statute. We can see no cogent reasons to apply the remedy the statute provides inconsistently with respect to employees versus nonemployees. Plaintiff is within the protected class and therefore he should be afforded all the incidents of the remedy, including the unavailability of contributory negligence as a defense." 284 N.E.2d at 400-401.

Nor can we see any cogent reasons why the defenses of assumption of risk and contributory negligence should be inapplicable in a suit brought by a railroad employee but applicable in a suit brought by a nonrailroad employee. The Safety Appliance Act does not require us to reach this unjust result. Crane, supra. Furthermore, our own case of Pollard, supra, clearly sets forth our position with respect to a statute imposing absolute liability--the defenses of assumption of risk and contributory negligence are not available.

There is, however, one area where a railroad employee is entitled to a more liberal standard imposing liability than is a nonrailroad employee--and that is with respect to the question of causation. In this case, the plaintiff offered an instruction which defined causation by the standards of the Federal Employers' Liability Act. That portion of the instruction stated:

". . . Under the Federal Safety Appliance Act, if a railroad, such as the Defendant in this action, violates any such act, and if the violation contributes in any way or manner to the injury of a person such as the Plaintiff in this case, such railroad shall be liable in damages to that person for his injuries."

(Emphasis added.)

This instruction defined causation according to the definition contained in the Federal Employers' Liability Act (45 U.S.C. § 51) and court decisions further solidifying the statutory definition. See Gallick v. Baltimore and Ohio Railroad Co. (1963), 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618; Rogers v. Missouri Pacific Railroad Co. (1957), 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493. The U.S. Supreme Court held in Crane, that one who is not a railroad employee cannot invoke the benefits of the Federal Employers' Liability Act in a suit against a railroad. (Crane, supra, 395 U.S. at 166.) Because there is no definition of causation in the Safety Appliance Act, we conclude that the issue of proximate cause must be decided on the basis of the definition which prevails under state law. See, McNair v. Berger (1932), 92 Mont. 441, 15 P.2d 834; Montana Jury Instruction Guide, No. 15.00, and cases cited in the commentary to this instruction. We have not fashioned a special definition to apply to statutes imposing absolute liability. Pollard, supra.

SAFE PLACE TO WORK

We next discuss the issue of whether the railroad owed plaintiff the duty to provide him with a safe place to work even though he was a nonrailroad employee. The legal basis upon which the plaintiff would impose this duty upon the railroad was never clearly set forth at the trial court level, nor is it clearly set forth in this appeal.

Plaintiff alleged in his complaint, and the allegation is carried over into the pretrial order--that the railroad breached its duty to provide him with a safe place to work. In the complaint, this was simply an allegation made without any specification of how or why the railroad did not provide

-17-

him with a safe place to work. He did, however, have several separate specifications of negligence in addition to the safe place to work allegation. In the pretrial order, he has a general allegation that the railroad failed to provide him with a safe place to work, and then several specifications of negligence, all _apparently_ aimed at specifying how or why the railroad breached its duty to provide him with a safe place to work.

Nowhere in the complaint or in the pretrial order is there an indication that the plaintiff claimed his status as a businesss-invitee triggered the railroad's duty to provide him with a safe place to work. This allegation first appeared in plaintiff's offered instructions, at the conclusion of the trial. We can get an appreciation of what happened only by reading the transcript with relation to the settlement of jury instructions. Plaintiff's instructions stated first that the plaintiff was a business invitee of the railroad, and second, that as a business invitee, the railroad owed him a duty to provide him with a safe place to work. It does not appear that the railroad refuted plaintiff's contention that he was a business invitee--for, on that question at least, the law is clear. However, the railroad did object to any conclusion that the duty to provide plaintiff with a safe place to work arose from plaintiff's status as a business-invitee.

Neither the railroad nor the plaintiff disagree that as to an invitee, the railroad had a duty to exercise reasonable care to avoid injuring an invitee on the premises. But plaintiff went a step further and persisted in his claim that the railroad had the duty, based on plaintiff's invitee status, to provide him with a safe place to work. He based his argument on the Federal Employers'

Liability Act, which, judicially interpreted, requires railroad employers to provide a safe place to work for their employees. Plaintiff at no time offered an explanation as to how or why, as a nonrailroad employee, he was entitled to the protection of the Employers' Liability Act. The railroad, on the other hand, cited Crane, supra, for the proposition that a nonrailroad employee cannot avail himself of the protection provided by the Employers' Liability Act.

Although the trial court rejected plaintiff's offered instructions, there is no clear reason why it did so. Was it because the trial court concluded that plaintiff was not a business invitee, or was it because the trial court concluded that the railroad did not owe plaintiff the duty to provide him with a safe place to work? Or was it both? Part of the problem here is that the language as to business-invitee status and that as to a safe place to work, was contained in the same instructions. Thus, without a clear ruling from the trial court as to why it rejected the instruction, we are left to guess. The problem is compounded because plaintiff's counsel made no effort to obtain a clear ruling from the trial court as to why the instructions were rejected. He should have done so. We are left with this situation at that point where the trial court refused plaintiff's offered instructions: the plaintiff offered no substitutes; the defendant offered no instructions on the question of the legal relationship existing between plaintiff and the railroad (the railroad contended plaintiff was an invitee); and the trial court proposed none of its own. The result is that the record is barren of instructions that would have in any way set forth plaintiff's theory of the case on the negligence count had the case been submitted to the jury. This is an anomolous

situation, to say the least.

As we have indicated, plaintiff in this appeal, now sets forth the issues as to business-invitee status and safe place to work, as separate issues. That is not the way they were presented to the trial court. Plaintiff in his briefs to this Court sets forth citation after citation of encyclopedia law that plaintiff was a business invitee--and with this the railroad agrees--as do we. There is no question, and apparently never was one that plaintiff at least had the status of a business-invitee. We do not need to belabor this point here.

In his briefs, the plaintiff contends that the railroad owed him a safe place to work, his counsel provides us with absolutely no authority, nor even good argument, that the railroad had a duty to provide him with a safe place to work. All of his citations miss the issue he raises. Nonetheless, there are important factors in this case, not brought to our attention by either party, that compel us to hold that under the facts of this case, the railroad did owe plaintiff the duty to provide him with a safe place to work.

It is an elementary principle that an employer must provide its employees with a safe place to work. Shannon v. Howard S. Wright Const. Co. (1979), _____Mont. _____, 593 P.2d 438; Pollard, 418 P.2d at 872; Allen v. Bear Creek Coal Co. (1911), 43 Mont. 269, 115 P. 673, 677; Anderson v. Northern Pac. Ry. Co. (1906), 34 Mont. 181, 85 P.2d 884, 890. See also 56 C.J.S. Master & Servant § 204; 53 Am.Jur.2d Master & Servant § 195. The railroad, of course, acknowledges this principle, but argues that this principle cannot apply here for the simple reason that plaintiff was not its employee. As far as it goes, it is a good argument. But we cannot ignore the real relationship between the

Burlington Northern and Ksanka Lumber Company.

At the beginning of trial, counsel for the railroad filed a motion in limine with the trial court, based on the following revelations: Ksanka Lumber Company is a wholly-owned subsidiary of Plum Creek Lumber Company; and Plum Creek Lumber Company is in turn, a wholly-owned subsidiary of Burlington Northern. The railroad asserted that it would be highly prejudicial for the jury to learn of its ownership of Ksanka Lumber Company, through the Plum Creek Lumber Company. It appears that this motion was granted, for the jury did not, at least directly, have this information. It may well be true that the information would be highly prejudicial to the defendant railroad here, but we cannot ignore this information in determining the duties owed by the railroad to the plaintiff here. The plaintiff was performing work more directly connected to the operations of a railroad than to the operations of a lumber company.

Plaintiff worked at a railroad siding, filling railroad cars with woodchips. His work required him to not only be on railroad tracks, but also to climb on and off railroad cars to facilitate their movement to the place of loading. He also had to shuttle the railroad cars away from the loading area to make room for the next railroad car to be loaded. That the railroad leased the premises to Plum Creek Lumber Company, which in turn leased the premises to Ksanka Lumber Company--both being the alter ego of the railroad company--makes little difference. The plaintiff was working directly in the operations of the railroad in every sense of the word.

We do not question here the right of a railroad corporation to create wholly-owned subsidiary corporations to conduct some of its business. We do, however, question

the right of a railroad by so doing, to absolve itself of the responsibility to provide a safe place to work for employees who are technically employed by a subsidiary corporation, but whose employment is directly related to the operations of a railroad. We thus hold that the defendant railroad here, owed the plaintiff the duty to provide him with a safe place to work.

Where one corporation is the wholly-owned subsidiary of the parent company, and where the employee is engaged in duties that are as closely connected to the business of the parent company as they are to the subsidiary corporation, as they are here, justice requires us to hold that both corporations owed the duty to provide plaintiff with a safe place to work. It is safe to assume that plaintiff collected Workers' Compensation benefits from Ksanka Lumber Company, and thus that Ksanka's duty to provide a safe place to work was discharged by the Worker's Compensation benefits. On the other hand, the right of the worker to sue the parent company under the facts here is not doubted. Had the employee been able to sue as an employee of the railroad under the Federal Employers' Liability Act, supra, and invoked the Safety Appliance Act as his cause of action, there is no doubt that his chances of recovery against the railroad would have been considerably enhanced. For example, plaintiff would have been entitled to a more liberal definition of causation than that to which he is entitled in this case. Thus, the railroad is entitled to a stricter definition of causation to be applied in this case.

The order of the District Court directing a verdict on both counts is reversed. This cause is remanded to the District Court for a new trial.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices