Guy R. MITCHELL, Plaintiff,

v.

SHELL OIL COMPANY, Brinkerhoff Signal, Inc.; Petrolane Incorporated; Joy Manufacturing Company; Doe Manufacturing Co. I; Doe Manufacturing Co. II; Doe Assembly Co.; Doe Design Co.; Doe Component Rig Part Co.; Doe Distributing Co.; and Doe Sales Co., Defendants.

No. CV–81–68–GF.

United States District Court,
D. Montana,
Great Falls Division.

Jan. 24, 1984.

---

**1328**

Jack Lewis, Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for plaintiff.

Neil Ugrin, Alexander & Baucus, Great Falls, Mont., for Joy Manufacturing.

W. H. Bellingham, Billings, Mont., for Shell Oil.

Rockwood Brown, Billings, Mont., for Brinkerhoff-Signal and Petrolane.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

The plaintiff, GUY MITCHELL, seeks redress for injuries he received while acting in the course of his employment with the defendant Brinkerhoff-Signal, Inc. (hereinafter "Brinkerhoff"). While working on an oil well drilling rig, Mitchell's legs were mangled by a chain which had become entangled in the unguarded portion of either the rotary table or the kelly bushing of the drilling rig. Mitchell seeks to impose liability upon numerous defendants, ranging from the manufacturers of the drilling rig and its component parts, to the lessee of the drilling site on which the mishap occurred. Mitchell predicates liability upon various theories of negligence and/or strict liability in tort for the manufacture and distribution of a dangerously defective product.

Two of the named defendants, *i.e.*, Brinkerhoff and Petrolane Incorporated (hereinafter "Petrolane"), move the court to enter judgment in their favor upon the ground that Mitchell has failed to state a claim against either entity upon which relief could be granted. Having exhaustively reviewed the merits of the arguments advanced by the parties with respect to the defendants' motion for summary judgment, the court is now prepared to rule.

## CLAIMS AGAINST BRINKERHOFF

The parties do not dispute that at the time of Mitchell's mishap, Brinkerhoff was enrolled under the Montana Workers' Compensation Act, Title 39, Montana Code Annotated (1979), as a Plan II employer, nor that Mitchell's accident was covered by Brinkerhoff's workers' compensation insurance. In fact, Brinkerhoff, through its insurer, accepted liability and has paid Mitchell's claims for compensation.

Brinkerhoff contends that Mitchell is barred from maintaining the claims asserted against Brinkerhoff by the exclusivity provision of the Montana Workers' Compensation Act, § 39–71–411 Montana Code Annotated (1979).[1] Mitchell, however, asserts that the claims advanced in the present action are recognized exceptions to the exclusivity provision of the Montana Workers' Compensation Act.

## CLAIM FOR PUNITIVE DAMAGES

The first claim asserted by Mitchell is one seeking punitive damages for the negligence of Brinkerhoff in failing to maintain a safe work place, and failing to warn or otherwise instruct Mitchell with respect to the unsafe conditions present at the work site. Mitchell seeks to impress upon the court that the exclusivity provision of the Montana Workers' Compensation Act applies only to claims for compensatory damages and not to claims for punitive or exemplary damages. Mitchell's proposition, however, must be rejected as lacking any support in the law of Montana; the controlling law in this diversity action.

The language of § 39–71–411 M.C.A. (1979) unequivocally establishes that the Workers' Compensation Act is the

---

1. § 39–71–411, M.C.A. (1979), provides in pertinent part:

    For all employments covered under the Workers' Compensation Act or for which an election has been made for coverage under this chapter, the provisions of this chapter are exclusive.... [A]n employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the Workers' Compensation Act....

sole and exclusive remedy of an employee covered by the Act and injured in the course of his employment. Moreover, the Montana Supreme Court's decisions interpreting the exclusivity provision reject, by necessary implication, the proposition that the provision only precludes an injured employee from seeking compensatory damages in a separate court action. *See, Enberg v. Anaconda Company,* 158 Mont. 135, 489 P.2d 1036 (1971); *Great Western Sugar Co. v. District Court for Thirteenth Judicial District,* 610 P.2d 717 (Mont.1980). Only an intentional act on the part of an employer which is maliciously and specifically directed at an employee will negate the immunity afforded an employer by the exclusivity provision of the Workers' Compensation Act. *Great Western Sugar Co. v. District Court for Thirteenth Judicial District,* 610 P.2d at 720. Any misconduct short of a genuine intentional act, however wanton, reckless or culpable such conduct might be, will not suffice to state a claim outside the exclusivity provision. *Id.; cf., Enberg v. Anaconda Company,* 158 Mont. 135, 489 P.2d 1036 (1971).

■ Mitchell presents a specious argument in support of his position. Mitchell is correct in recognizing that an award of compensatory damages is not a prerequisite to an award of punitive or exemplary damages in Montana. *See, Miller v. Fox,* 174 Mont. 504, 571 P.2d 804 (1977); *cf. Lauman v. Lee,* 626 P.2d 830 (Mont.1981). That principle, however, is not determinative of the issue presented. Rather, it is the intent of the legislature in enacting the exclusivity provision as codified in § 39–71–411 M.C.A. (1979) that is determinative. Mitchell's argument evades the policy behind the exclusivity provision and the Workers' Compensation Act as a whole. Mitchell invites this court to abrogate the political judgment of the Montana Legislature through judicial fiat, and announce that § 39–71–411 M.C.A. (1979) does not mean what it says.

■ It is true, as Mitchell asserts, that the Workers' Compensation Act is to be liberally construed in favor of an injured employee, with any ambiguity in the act being resolved in favor of that employee. *See, Garland v. Anaconda Company,* 177 Mont. 240, 581 P.2d 431 (1978). That liberality of interpretation, however, must not be of such magnitude as to have the practical effect of repealing the Act. *See, Klein v. Independent Wholesale Associated Grocers,* 167 Mont. 341, 538 P.2d 1358 (1975). Due regard must be afforded the effect that the construction of a particular portion of the Act will have upon the Act as a whole. *See, Hendy v. Industrial Accident Board,* 115 Mont. 516, 146 P.2d 324 (1944). The construction of § 39–71–411 M.C.A. that Mitchell would have this court adopt would operate to defeat the policy upon which the Act is bottomed.

## PRODUCTS LIABILITY

Mitchell next attempts to overcome the exclusivity barrier presented by the Workers' Compensation Act by invoking the so-called "dual capacity" doctrine, which recognizes that an employer may be vulnerable to an action in tort, if he acts simultaneously in two separate capacities with respect to an injured employee. *See,* 2A Larson WORKMEN'S COMPENSATION LAW, § 72.80 *et seq.* (1976). Mitchell contends that Brinkerhoff not only assumed the liabilities of an employer, with respect to Mitchell's injuries, but that Brinkerhoff stands subject to suit as the manufacturer of the drilling rig under the principles of products liability.

The "dual capacity" doctrine is invoked in a variety of situations where an employer may be said to owe some duty to an injured employee distinct from his duties as an employer. The doctrine is commonly utilized in those situations where an employee is injured during the course of his employment by a piece of equipment which was manufactured by his employer. *See, e.g., Douglas v. E & J Gallo Winery,* 137 Cal.Rptr. 797, 69 Cal.App.3d 103 (1977). Only a limited number of jurisdictions, however, recognize the doctrine as a legitimate exception to the exclusivity provisions normally attendant workmens' compensation acts. *See, Douglas v. E & J Gallo Winery,*

*Id.; Mercer v. Uniroyal, Inc.*, 49 Ohio App.2d 279, 361 N.E.2d 492 (1977). The overwhelming number of jurisdictions, as well as the leading commentator on the subject of workmens' compensation, reject the doctrine as contrary to both the express language of the respective exclusivity provisions and the fundamental doctrines of compensation law. *See*, 2A Larson, WORKMENS' COMPENSATION LAW, §§ 72–80 *et seq.* (and cases cited therein) (1976); *cf. Workers' Compensation Act*, 9 ALR 4th 873. Even those jurisdictions which recognize the "dual capacity" doctrine limit its use to those situations where the product involved is manufactured by the employer for sale to the general public, rather than for the sole use of the employer. *See, Douglas v. E & J Gallo Winery, supra; Knous v. Ridge Machine Co.*, 64 Ohio App.2d 251, 413 N.E.2d 1218 (1979).

The viability of the "dual capacity" doctrine in Montana is questionable. Although there appears to be authority in support of its existence, in certain contexts, *see, Vesel v. Jardine Mining Co.*, 110 Mont. 82, 100 P.2d 75 (1940) (allowed an injured employee to maintain common law action for negligence against his employer in the latter's capacity as the provider of medical care), there exists no case law recognizing the doctrine in the situation where the employer is the manufacturer of a defective product which injures an employee. The court need not detain itself, however, in determining the status of the "dual capacity" doctrine in Montana. Assuming *arguendo* that under Montana law an employer is liable in his capacity as the manufacturer of a dangerously defective product which injures an employee, the facts as established in the action *sub judice* do not support Mitchell's theory of products liability.

In *Brandenburger v. Toyota Motor Sales*, 162 Mont. 506, 513 P.2d 268 (1973), the first Montana case adopting the doctrine of strict liability in tort, the Montana Supreme Court specifically adopted the definition of strict liability in tort as set forth in § 402A of the *Restatement (Second) of the Law of Torts*. § 402A provides that strict liability in tort will apply only to "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer ... if (a) the seller is engaged in the business of selling such a product...." Comment (f) to § 402A explains:

> The rule stated in this Section, applies to any person engaged in the business of selling products for use or consumption.

The limiting of § 402A to the buyer-seller relationship results largely from the historical development of strict liability in tort as an outgrowth of warranty principles, which are available primarily under the law of sales.

The record in this matter clearly establishes that Brinkerhoff never manufactured oil well drilling rigs for distribution to the general public. Brinkerhoff did not place the subject drilling rig, nor drilling rigs of any kind, in the stream of commerce. To the contrary, the drilling rig was acquired by Signal Drilling & Exploration, Inc. from Pennant Drilling Company sometime during the 1950's. The drilling rig became the property of Brinkerhoff after a series of corporate mergers in which Petrolane, as the parent corporation, acquired Signal Drilling and Exploration, Inc. and Brinkerhoff Drilling Company, and ultimately merged the two subsidiaries to form Brinkerhoff-Signal, Inc., the defendant in this action. The record dispels any contention that Brinkerhoff was the original manufacturer of the drilling rig or any of its component parts. Rather, Mitchell alleges that Brinkerhoff, or its predecessors, modified the drilling rig over the years of its use. The modification of the drilling rig, Mitchell submits, is tantamount to the manufacture or remanufacture, of the drilling rig.

An entity may be subject to liability as the manufacturer of a defective product where it modifies a particular product to such an extent that, in essence, it creates a new product. *See, e.g., Stoddard v. Ling-Temco-Vought, Inc.*, 513 F.Supp. 314, 320 (C.D.Cal.1980), rev'd. on other grounds, *sub nom. Ashland v. Ling-Temco-Vought,*

*Inc.*, 711 F.2d 1431 (9th Cir.1983). Nonetheless, proper invocation of § 402A is dependent on a plaintiff establishing that the manufacturer of the modified product is a seller engaged in the business of selling that modified product within the meaning of § 402A. It is precisely this point which proves fatal to Mitchell's claim based upon products liability.

Although Brinkerhoff's modification of the drilling rig may have been tantamount to the creation of a substantially different product, Brinkerhoff was not in the business of selling that product to the general public. Accordingly, Brinkerhoff is not subject to liability under § 402A.

## CLAIMS AGAINST PETROLANE

Mitchell also seeks to impose liability upon Petrolane, the parent company of the defendant Brinkerhoff. The claim against Petrolane is predicated on the identical theory of negligence advanced against Brinkerhoff, a wholly owned subsidiary of Petrolane. Mitchell submits that regardless of whether the exclusivity provision of the Montana Workers' Compensation Act precludes him from maintaining a common law action for negligence against Brinkerhoff, he is free to pursue such an action against Petrolane. Petrolane obviously disputes that proposition.

The parties discuss, at great length, whether Petrolane falls within the protective umbrella provided Brinkerhoff by the exclusivity provision as codified in § 39–71–411 M.C.A. (1979). That issue, however, is essentially irrelevant to the disposition of Petrolane's motion for summary judgment. Rather, the claims against Petrolane must be rejected upon a more basic premise of tort law.

■■ The record evinces that Brinkerhoff and Petrolane are distinct corporate entities. Consistent with Montana law, the separate corporate identities maintained by Petrolane and Brinkerhoff must be observed. *See, Flemmer v. Ming,* 621 P.2d 1038 (Mont.1980). Neither the immunities nor liabilities of either corporation automatically flow to the other. *See, e.g., Reynolds v. Burlington Northern, Inc.,* 621 P.2d 1028, 1038 (Mont.1980). Having decided to take advantage of the benefits attendant to operating its business through wholly owned subsidiary corporations such as Brinkerhoff, Petrolane is precluded from claiming the immunity afforded those subsidiaries by the workmens' compensation laws. Instead, Petrolane occupies the position of a third party with respect to the employees of its wholly owned subsidiaries, being liable to such employees under the customary principles of common law for its own independent acts of negligence.

■■ The Montana Workers' Compensation Act expressly allows an injured worker to maintain an action in tort against a third party responsible for his injury, regardless of the fact that he may have been compensated by his immediate employer via the Workers' Compensation Act. *See,* § 39–71–412 M.C.A. (1979); *Reynolds v. Burlington Northern, Inc., supra* at 1038. To maintain an action in tort against a third party, however, the injured worker must establish that the third party owed the worker a duty, the breach of which caused the injuries sustained. Where the employee of a subsidiary corporation initiates a suit in negligence against the subsidiary's parent corporation, the employee must establish the existence of an independent duty owed by the parent corporation to that employee. *See, Reynolds v. Burlington Northern, supra,* at 1038; *see also, Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655 (6th Cir.1979), *cert. denied,* 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47. Any attempt to impose liability by utilizing the doctrine of *respondeat superior* is obviously ill-fated where, as in the case *sub judice,* the corporate separateness between the parent and subsidiary is maintained.

A review of the facts in *Reynolds* is instructive. The injured worker in *Reynolds* was an employee of Kanaska Lumber Company, a wholly owned subsidiary of Plum Creek Lumber Company, which in turn was a wholly owned subsidiary of Burlington Northern, Inc. The worker was injured when a string of railroad cars he was loading unexpectedly moved forward and struck a cable over which the injured

worker was straddled. The railroad cars were owned by, and under the control of Burlington Northern, Inc. Employees of the railroad had placed the string of five empty cars on the premises of the Kanaska Lumber Company for loading. Those employees, however, failed to set the brakes on the string of five cars. The failure to set the brakes was found to be the proximate cause of the injuries sustained by the plaintiff.

Critical to the rationale espoused in *Reynolds* was the fact that the employee was working in and around a railroad car within the control of Burlington Northern, Inc. Burlington Northern, Inc., had the independent duty of maintaining the cars in a condition which did not present a hazard to any individual working in and around that car, regardless of who that individual's employer might be. In essence, Burlington Northern, Inc., occupied the position of a third party with respect to the injured worker. The interpretation of *Reynolds* offered by Mitchell, to the effect that a parent corporation is subject to tort liability for the injuries of any employee of a subsidiary corporation, totally ignores the facts on which the decision was premised.

In *Boggs*, the parent corporation undertook to provide certain services related to safety at the subsidiary's mining operations. As such, the parent corporation owed the subsidiary's employees the duty of performing those services in a non-negligent manner. The negligent performance of the services provided by the parent corporation rendered the parent corporation liable in tort to the subsidiary's employees injured as a result of the parent corporation's negligence.

■ The facts in the case at bar fail to establish that Petrolane breached any independent duty owed to the employees of Brinkerhoff. To the contrary, the record establishes that Petrolane is but a holding company which carries on no business operations of its own, but operates solely through its subsidiaries. Brinkerhoff had the sole responsibility to provide a safe workplace for the plaintiff Mitchell. Any negligence on the part of Brinkerhoff with respect to that duty cannot be imputed to Petrolane. Petrolane owed no common law duty to Mitchell upon which a claim for negligence can be predicated.

For the reasons set forth herein,

IT IS HEREBY ORDERED that the consolidated motion for summary judgment of defendants Brinkerhoff-Signal, Inc., and Petrolane Incorporated be, and the same hereby are, GRANTED.

The Clerk shall enter judgment accordingly.