[No. F014281. Fifth Dist. Jan. 28, 1991.]

MONTE VISTA DEVELOPMENT CORPORATION, Petitioner, v. THE SUPERIOR COURT OF FRESNO COUNTY, Respondent; WILLEY TILE COMPANY, Real Party in Interest.

**COUNSEL**

Marderosian & Swanson, Michael G. Marderosian and Eric Oren for Petitioner.

No appearance for Respondent.

Myers & Overstreet and Gregory L. Myers for Real Party in Interest.

**OPINION**

**STONE (W. A.), J.—**

### THE CASE

Plaintiff Diane Testa alleges in her complaint causes of action in general negligence and strict products liability against defendants Monte Vista Development Corporation (petitioner) and Willey Tile Company (real party in interest). Monte Vista cross-complained, naming Willey Tile Company, Bedrosian Builders Supply and Vitromex as cross-defendants. In its cross-complaint, Monte Vista seeks indemnification, apportionment of fault and declaratory relief. Willey Tile filed a motion for summary adjudication on the issues of negligence and strict products liability; the court granted the motion on the strict liability cause of action but denied it on the negligence cause of action.

On Monte Vista's petition for a writ of mandate, prohibition, or other appropriate relief, we issued an order to show cause directed both to the superior court and to Willey Tile.

### THE FACTS

In her complaint Testa alleges that while cleaning a bathtub in her home she braced herself by placing her right hand on a ceramic soap dish

mounted on tile behind the bathtub, the handle on the soap dish broke, and she suffered a severe laceration.

Monte Vista's cross-complaint alleges Willey Tile, Bedrosian, and Vitromex were responsible for the manufacture, design, distribution, sale, selection, purchase, and/or installation of the soap dish. The declaration of Larry Dow Willey, a principal of Willey Tile during the relevant period, states Willey Tile was in the business of installing residential and commercial ceramic tile. In 1983, Monte Vista accepted Willey Tile's bid for work on Monte Vista's Cougar Estates. Willey Tile began installing tile at the residences shortly thereafter. Pursuant to the terms of the accepted bid, Willey Tile was to install soap dishes and other tile fixtures it purchased in bulk from Bedrosian. Willey Tile was not in the business of manufacturing soap dishes, nor did it have any financial interest in Cougar Estates except for moneys due pursuant to the bid.

The documents incorporated into the declarations of Mr. Willey and plaintiff's counsel reveal Willey Tile's bid did not specify the type or brand of soap dish to be installed. Mr. Willey declared his company installed "generic" soap dishes. The invoices of Bedrosian indicate it sold and shipped to Willey Tile various building supplies, including certain soap dishes. The invoices identified each item with a description and an item number.

Monte Vista paid Willey Tile based upon invoices which showed an amount due for each residence. Willey Tile's invoices did not set out separate charges for materials or fixtures used in the tile installation.

## DISCUSSION

■■■■■ When a trial court grants summary adjudication, the reviewing court, as in the case of summary judgment, views the supporting affidavits narrowly and the opposing affidavits broadly.[1] " ' ". . . In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such

---

[1] Although Willey Tile sought summary adjudication of issues, the trial court order granted "summary judgment" on the strict product liability cause of action. However, the court appears to have intended only to grant in part Willey Tile's motion for summary adjudication of issues. The court may grant only that relief requested. (See, e.g., *Gonzales* v. *Superior Court* (1987) 189 Cal.App.3d 1542, 1545-1546 [235 Cal.Rptr. 106].)

summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts. [Citations.]" [Citation.]'" (*Zeilman* v. *County of Kern* (1985) 168 Cal.App.3d 1174, 1178 [214 Cal.Rptr. 746].)

■ Further, our role is well settled when summary adjudication is granted as a matter of law: "The [trial] court can grant summary adjudication of issues as to which there exist [*sic*] no material triable controversy. (Code Civ. Proc., § 437c, subd. (f).) To the extent this court reviews the judgment granting summary adjudication as a matter of law, the review will be de novo. (Cf. *Goddard* v. *South Bay Union High School Dist.* (1978) 79 Cal.App.3d 98, 105 [144 Cal.Rptr. 701].)" (*Lough* v. *Coal Oil, Inc.* (1990) 217 Cal.App.3d 1518, 1524-1525 [266 Cal.Rptr. 611].)

■ In its order the court stated:

"1. That Defendant WILLEY TILE COMPANY has no liability to any party in the above entitled action as to strict product liability. Defendant WILLEY TILE COMPANY being a subcontractor within the meaning and application of California law as expressed by the Court's finding in the case of *La Jolla Village Homeowner's Association, Inc.* v. *Superior Court* (1989) 212 CA3d 1131.)"

In *La Jolla Village Homeowners' Assn., Inc.* v. *Superior Court* (1989) 212 Cal.App.3d 1131 [261 Cal.Rptr. 146], the association sought damages for construction defects and land subsidence at a condominium project. Plaintiff initially named as defendants the developer and fictitious defendants. The association amended the complaint twice "to name as Doe defendants the design professionals and engineers and the subcontractors involved in 'constructing and manufacturing' the alleged defective chimneys, retaining walls, roofs, concrete and tile stairways, building pads and drainage system." (*Id.* at pp. 1136-1137.) The association sought review of the trial court's order which struck from its third amended complaint the second cause of action alleging strict liability. The trial court granted without leave to amend motions for judgment on the pleadings filed by a number of subcontractors on the strict liability cause of action. It ruled the subcontractors provided services rather than a component part: "'. . . there is no strict liability on the part of the subcontractors who furnished primarily services as opposed to a component part like a furnace or something of that nature.'" (212 Cal.App.3d at p. 1138.)

The appellate court concluded as a matter of law the association could not state a strict liability cause of action against the particular subcontractors. (212 Cal.App.3d at p. 1136.)

As we read *La Jolla*, the alleged defect was in the preparation of the soil under the homes of the association members. Therefore, for example, any liability of the masonry contractor would be based on soil subsidence and the resulting damage done to the masonry work. Potential strict liability was not predicated upon the mason's purchase or use of defective materials, but upon the faulty method of construction of the homes. When the soil slipped, the fireplaces cracked. Against that background, the court concluded the subcontractors could not be held to a strict liability standard even if a trier of fact were to determine the houses were defective products.

The case before us would be similar to *La Jolla* if, for example, the Testa home allegedly had been improperly constructed in some manner, causing the tile work to fail. In such circumstances, for the reasons discussed in *La Jolla*, we would agree the tile subcontractor could not be held strictly liable for a product failure.

It is critical to identify the product which a plaintiff claims to be defective. In *La Jolla* the defective products were the homes. Here, however, the allegedly defective product was not a home constructed and sold by Monte Vista, but a particular soap dish purchased and installed by Willey Tile. Plaintiff makes no allegation her home was otherwise improperly constructed.

*La Jolla* makes this sweeping assertion:

"Our holding is supported by the reported cases dealing with 'subcontractors' and strict liability. While these cases have generally distinguished 'subcontractors' from builders/developers as providers of services who were only liable for their own negligence or intentional acts, their reasoning conveys a broader reach to include all subcontractors in the typical real estate construction project regardless of whether they provided 'services' or a 'product.'" (212 Cal.App.3d at p. 1146.)

If, by that assertion, the court meant a "product" to be a house or houses sold by a developer, we agree. However, if a "product" includes a particular defective item within a house, we disagree. To that extent the statement in *La Jolla* is dictum since *La Jolla* did not concern a specific piece of material provided by a subcontractor. In support of its holding *La Jolla* cites three cases, none of which dealt with a subcontractor who supplied faulty material. (*Gagne* v. *Bertran* (1954) 43 Cal.2d 481 [275 P.2d 15] [test-hole driller not strictly liable for advice regarding amount of fill needed on a residential lot]; *Stuart* v. *Crestview Mut. Water Co.* (1973) 34 Cal.App.3d 802 [110 Cal.Rptr. 543] [engineers not strictly liable for the design of a defective water system]; *Swett* v. *Gribaldo, Jones & Associates* (1974) 40 Cal.App.3d 573 [115 Cal.Rptr. 99] [soils engineer not strictly liable for cracks caused by unstable soil].)

The focus of our analysis is not on whether Willey Tile was a subcontractor but whether the tile company came within the chain of commerce as a supplier of the soap dish to the extent that it became strictly liable if the item was defective. We conclude liability should not be extended under these circumstances, although we have found no authority on the issue.

We turn to the Restatement Second of Torts in our analysis:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) *the seller is engaged in the business of selling such a product*, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." (Rest.2d Torts, § 402A, italics added.)

In a caveat following section 402A the drafters of the Restatement indicate they express no opinion on whether the strict liability set out in the section extends to the seller of a component part. However, we need not reach that question because we conclude the evidence in support of the motion for summary adjudication shows Willey Tile was not a "seller" of the soap dish within the meaning of section 402A, subdivision 1(a) of the Restatement Second of Torts.

Willey Tile was not in the business of selling soap dishes or any other fixtures. It purchased the soap dish that injured plaintiff, as well as other fixtures, in order to complete its subcontract with Monte Vista. Obviously, it mattered not to Willey Tile whether Monte Vista or someone else supplied the tile fixtures. Willey Tile's job was to do the tile work. Accordingly, under the guidelines of the Restatement Second of Torts, Willey Tile is not an entity which is subject to strict liability for supplying a defective product.

The opposing party, Monte Vista, presented no contradictory evidence which would raise a factual issue whether Willey Tile was a "seller" within the meaning of Restatement Second of Torts section 402A, subdivision 1(a).

As we have previously noted, no California authority has yet imposed strict liability for a product defect under the circumstances here presented. We decline to do so now.

### DISPOSITION

We deny the petition and award costs in this proceeding to real party in interest.

Martin, Acting P. J., and Ardaiz, J., concurred.