662 So.2d 640 (1995)
Philip SCORDINO and Dwight Copeland, et al.
v.
HOPEMAN BROTHERS, INC.
No. 91-CA-01053-SCT.
Supreme Court of Mississippi.
October 12, 1995.
*641 Lowry M. Lomax, F. Gerald Maples, Maples & Lomax, Pascagoula, for Appellant.
Suzanne N. Saunders, Rebecca L. Wiggins, Saunders & Wiggins, Jackson, for Appellee.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the Court:
In this case, we are called upon to determine whether a joiner subcontractor, in the *642 business of installing shipboard furniture, beds, box berthing, non-structural bulkheads, overheads, installation, etc., is strictly liable or negligent as a manufacturer or a seller under Section 402A of the Restatement Second of Torts for installing and supplying asbestos paneling as required under the subcontract. We conclude that the subcontractor in this case was not a manufacturer or a seller and therefore is not strictly liable, or liable under the theory of negligence, for failure to warn.

I.
In their complaint, the Plaintiffs, Appellants herein, former employees of Ingalls Shipyard Corporation, alleged that while employed at Ingalls, they were exposed to asbestos, a fibrous, incombustible, chemical-resistant mineral, in the form of Marinite and Micarta, a fire-resistant wall paneling supplied and installed by Hopeman Brothers, Inc. The Plaintiffs claimed that irreparable and progressive lung damage was caused due to being exposed to the dust generated by the installation of the paneling, and that during this exposure period, they had no reason to believe or otherwise had knowledge that the Marinite was dangerous when inhaled or otherwise ingested. The Plaintiffs alleged that Hopeman, among others, knew or should have known about the dangers of asbestos and failed to warn the Plaintiffs about said dangers by ignoring or actively and fraudulently concealing the danger. Thus, the Plaintiffs alleged that Hopeman was negligent and strictly liable for its conduct which resulted in the aforementioned injuries. In response, Hopeman claimed that because it was a installer and not a seller or manufacturer of asbestos, it was not liable for negligence or under strict liability.
At trial, following the testimony of witnesses for the Plaintiffs and Hopeman, Hopeman moved for a directed verdict which was granted by the trial court. The trial court reasoned that the Micarta and Marinite installed by Hopeman was not Hopeman's product. Rather, the trial court concluded, Hopeman was "a subcontractor of labor to assemble and install various materials," pursuant to the subcontract which contained exact specifications.
This appeal ensued with the Plaintiffs claiming that the directed verdict was against the overwhelming weight of the evidence with regards to strict liability and negligence.

II.

A. Strict Liability.
In State Stove Manufacturing Co. v. Hodges, 189 So.2d 113 (Miss. 1966), cert. denied 386 U.S. 912, 87 S.Ct. 860, 17 L.Ed.2d 784 (1967), this Court adopted the doctrine of strict liability under Section 402A of the American Law Institute's Restatement of Torts (Second). Section 402A states:
Special Liability of Seller of Product for Physical Harm to User or Consumer 
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in condition in which it is sold (2) The rule stated in Subsection (1) applies although
(a) the seller exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
State Stove Manufacturing, 189 So.2d at 118, citing Restatement of Torts (Second) § 402A (1965). See also Coca-Cola Bottling Co., Inc. of Vicksburg v. Reeves, 486 So.2d 374, 378 (Miss. 1986), citing William Cooper and Nephews, Inc. v. Pevey, 317 So.2d 406, 408 (Miss. 1975); and Early-Gary, Inc. v. Walters, 294 So.2d 181, 186 (Miss. 1974) ("... before recovery can be had under Section 402A, three elements must be established by proof:
(1) that the plaintiff was injured by the product, (2) that the injury resulted from a defect in the product which rendered it unreasonably *643 dangerous, and (3) that the defect existed at the time it left the hands of the seller.").
The applicability of the strict liability doctrine depends upon, among other things, whether the defendant is a manufacturer or seller in the business of selling a defective product. Harmon v. National Automotive Parts Ass'n, 720 F. Supp. 79, 80 (N.D.Miss. 1989) ("The statement of the rule makes it obvious that strict liability for injury caused by a defective product is not to be imposed on one who neither manufactures nor sells the products"); Restatement (Second) of Torts § 402A. Thus, resolution of this issue turns on the question of whether Hopeman is a manufacturer or a seller.
The term "seller" is defined as a person who sells or contracts to sell goods. Volkswagen of America, Inc. v. Novak, 418 So.2d 801, 804 (Miss. 1982), citing Miss. Code Ann. § 75-2-103(1)(d) (1972); 67 Am.Jur.2d Sales § 16 (1985). Comment f of Restatement (Second) Section 402A further defines a seller as any person engaged in the business of selling products for use or consumption. It is not necessary that the seller be engaged solely in the business of selling a specific product; however, the seller must not be an occasional seller of the product. Restatement (Second) Torts, § 402A, Comment f. The question here then is what is an occasional seller and whether Hopeman, as a subcontractor, falls within this category.
This Court has not addressed the issue of whether a subcontractor is an occasional seller and consequently not subject to the provisions of Restatement (Second) of Torts, Section 402A. However, the Plaintiffs insist that State Stove Manufacturing Company v. Hodges, 189 So.2d 113 (Miss. 1966), if not controlling, may provide some guidance.
In State Stove, an action was brought by owners of a home destroyed in a fire due to the explosion of a water heater against the manufacturer of the heater and the contractors who constructed the home and supplied and installed the water heater. State Stove Manufacturing Company v. Hodges, 189 So.2d 113 (Miss. 1966). The chancery court dismissed the suit with prejudice against the contractors and both the homeowners and the manufacturer appealed. Id. On appeal, this Court reversed. This Court found that the contractors were engaged in the business of selling and installing water heaters in homes constructed by them and were therefore strictly liable for its faulty installation. Id. at 123-124. Although it is urged that this case stands for the proposition that contractors are sellers, the fact is that the contractors in State Stove, who installed the water heater improperly, were also the owners of the hardware store from whence the water heater was purchased. That is, they were in the chain of delivery of the product in a different capacity than a mere contractor and that capacity was, inarguably, a seller.
The Plaintiffs also maintain that Bounds v. Joslyn Manufacturing and Supply Company, 660 F. Supp. 1063 (Miss. 1986), a Mississippi District Court case, may shed some light on this issue. In this case, the plaintiff was an employee of an cable construction company that had entered into a contract with a cable company to construct twenty-seven miles of cable system in Meridian, Mississippi. Bounds v. Joslyn Manufacturing and Supply Company, 660 F. Supp. 1063 (S.D.Miss. 1986). Pursuant to the contract, the cable company supplied all the cable poles and other necessary hardware for the construction of the cable system from the defendant retailer. Id. Included among the necessary hardware was a guy strap which had been manufactured by the defendant supply company. Id. When the plaintiff subsequently used the guy strap in the manner for which it was intended, the guy strap broke and this suit ensued. Id. The court addressed the question of whether supplying equipment under the terms of a contract made the supplier a seller of that equipment, and if so, did the act of supplying that equipment rise to the level of conducting the "business of selling" as required under Restatement (Second) of Torts § 402A. Id. at 1066. The court concluded:
The Mississippi Supreme Court would, in all probability, take the position that an employee may sue one who contracts for services with his employer when, under the terms of the contract, he agrees to provide the necessary materials and supplies with *644 which the employer's personnel must work. The employee needs to show for products liability purposes that the party that supplied the product to his employer furnishes materials in a contract arrangement on such a regular or consistent basis that the act of supplying products is a part of its business activity and not an occasional act.
Id. at 1068-1069. In reaching this conclusion, the court recognized that there is no Mississippi case which discusses whether a supplier of materials under the terms of a contract is engaged in the business of selling. In the absence of Mississippi case law, the court relied upon the following three federal cases: Bosse v. Litton Unit Handling Systems, Inc., 646 F.2d 689 (1st Cir.1981); Mitchell v. Shell Oil Company, 579 F. Supp. 1326 (D.Mont. 1984); Walker v. Skyclimber, Inc., 571 F. Supp. 1176 (D.C.V.I. 1983). None of these cases appear to support the District Court's conclusion. For example, in Bosse, the plaintiff's characterization of the general contractor as seller was never challenged, as it is in the instant case. Consequently, the issue of whether the defendant was a seller was not discussed. The holding of Mitchell primarily dealt with the dissimilar question of liability of an employer as seller to an employee. In any event, the Mitchell Court expressly rejected the proposition that an employer could be classified as a seller engaged in the business of selling work related equipment to his employees for purposes of strict liability. Likewise, in Walker, the court rejected a strict liability claim against an owner, which purchased a defective scaffolding device and transferred it to an independent contractor to do maintenance work at a refinery, because the owner was not "engaged in the business of selling" such devices.
Other jurisdictions which have addressed this issue have determined that contractors and subcontractors are not within the scope of the term "seller" as it is used in Section 402A of the Restatement (Second) of Torts. For example, in Monte Vista Development Corporation v. Willey Tile Company, 226 Cal. App.3d 1681, 277 Cal. Rptr. 608 (1991), the California Court of Appeals held that a subcontractor who was in the business of installing commercial and residential ceramic tile was not strictly liable for supplying a defective soap dish since it was not in the business of selling soap dishes. In its analysis, the California appeals court stated that "[i]t is critical to identify the product which a plaintiff claims to be defective." Id., 277 Cal. Rptr. at 610. Furthermore, the appeals court stated that the focus of its analysis was not on whether [the defendant] was a subcontractor, but whether the [the defendant] came within the chain of commerce as a supplier of the soap dish to the extent that it became strictly liable if the item was defective. Id. The appeals court concluded in this case that liability should not be extended under these circumstances. Id.
Another example is the Tennessee case, Delta Refining Co. v. Procon, Inc., 552 S.W.2d 387 (Tenn. Ct. App. 1976). In Delta Refining Co., a fire occurred at an oil refinery due to a defective pump purchased and installed by a general contractor under a general construction contract with the oil refinery. Delta Refining Co. v. Procon, Inc., 552 S.W.2d 387 (Tenn. Ct. App. 1976). The oil refinery brought suit against the manufacturer of the pump and the contractor. Id. The circuit court granted a directed verdict in favor of the contractor, and the plaintiff appealed. Id. The Tennessee Court of Appeals affirmed the judgment. Id. The appeals court held that the contractor was not liable under the strict liability doctrine as a seller of the pump because the contractor was not in the business of selling such pumps, but had merely contracted with the oil refinery to purchase and install the pump which the codefendant was to build according to specifications furnished by the oil refinery. Id. at 388.
A third example is another Tennessee case, Parker v. Warren, 503 S.W.2d 938 (Tenn. Ct. App. 1973). In this case, a husband and wife brought an action against a wrestling promoter and owner of a building in which the match was held for injuries sustained when a bleacher seat upon which the wife was sitting collapsed. Parker v. Warren, 503 S.W.2d 938 (Tenn. Ct. App. 1973). The promoter filed a third-party complaint against the supplier of the lumber used in the bleachers and the carpenters who constructed *645 the bleachers. Id. at 940. At trial, a verdict was entered in favor of the husband and wife against the promoter and in favor of the carpenters against the promoter. Id. The promoter appealed. Id. The Tennessee appeals court held that the carpenters were not sellers of the lumber and they were not engaged in the business of selling such a product. Id. at 945.
A fourth and very recent illustration of how courts of other jurisdictions have addressed the issue of a contractors liability under Section 402A of the Restatement (Second) of Torts is Maack v. Resource Design & Const., Inc., 875 P.2d 570 (Utah App. 1994). In this case, the plaintiffs alleged that the exterior components of a residence  the stucco, membranes, and adhesives  built by the defendants were defective, and defendants were therefore strictly liable for damages under Section 402A of the Restatement (Second) of Torts. Maack v. Resource Design & Const., Inc., 875 P.2d 570, 581 (Utah App. 1994). This claim was rejected by the trial court on the basis that the defendants were not "sellers". Id. The Court of Appeals of Utah agreed. The court stated that
[W]e find no reason to disturb the trial court's conclusion ... that [the Defendants] were not "sellers" or manufacturers of the component parts of the exterior of the house. The [Plaintiffs] claim, nonetheless that [the Defendants] were "sellers" of the component parts because the contract ... specified that [the Defendants] would be on a cost of work plus fee basis. However, this inclusion of the cost of materials seems to have been solely for the purpose of calculating a fee for the work done. The evidence is undisputed that [the Defendants] were construction contractors who simply utilized these component parts when constructing the residence  they were not in the business of selling stucco, adhesives, or membranes on wholesale or retail basis.
Id. The court did not cite any authority for this holding other than the Restatement.
The aforementioned cases stand for the proposition that a contractor/subcontractor is not a seller, within the scope of Section 402A of Restatement (Second) of Torts, and is therefore not liable for any component parts it may supply in compliance with the performance of a job or service. Other cases which follow this rule are: Freitas v. Twin City Fisherman's Cooperative Association, 452 S.W.2d 931 (Tx.App.Ct. 1970); The Trustees of Columbia University in the City of New York v. Gwathmey Siegel and Associates Architects, 192 A.D.2d 151, 601 N.Y.S.2d 116 (1993); Sapp v. Morton Buildings, Inc., 973 F.2d 539 (7th Cir. (Ind.) 1992).
The facts of this case are: (1) that Hopeman is in the business of joiner subcontracting, i.e., building the interior outfitting of a ship which consisted of installing shipboard furniture, beds, box berthing, non-structural bulkheads, overheads, insulation etc.; (2) that the materials Hopeman purchased to fulfill a joiner subcontract were not purchased for resale; (3) that the services and materials Hopeman provided were specified in the contract with Ingalls and the vessel owners; and (4) that the total price of a job included both the services and materials that were provided. Based on this evidence, it is clear that Hopeman was not a seller in the business of selling Micarta and Marinite. Rather, as a subcontractor, Hopeman merely supplied the materials to complete the service for which it was hired pursuant to the contract between the parties. It follows that Hopeman is not strictly liable under the Restatement.
The Restatement does not define "manufacturer." However, since we conclude that Hopeman is not a seller, it necessarily follows that Hopeman is also not a manufacturer. A manufacturer, as implied by the Restatement (Second) of Torts § 395, Comment b, is a person or company "who regularly, and in the course of their principal business, create, assemble and/or prepare goods for sale to the consuming public." Olson v. Ulysses Irrigation Pipe Co., Inc., 649 F. Supp. 1511 (Dist.Kan. 1986). In other words a manufacturer produces goods as a principal part of its business and sells them either directly or for resale to the consuming public. In the instant case, as previously indicated, Hopeman is a subcontractor in the business of joiner subcontracting and not in *646 the business of producing Marinite-Micarta panels to be sold to the consuming public.

B. Negligence
The Plaintiffs contend that Hopeman was negligent in its failure to warn the Plaintiffs of the hazards of asbestos. The Plaintiffs argue that "any prudent company knew or should have known that asbestos was a dangerous substance when inhaled." Therefore, the Plaintiffs argue, Hopeman was under a duty to warn bystanders of the inherent risks involved in breathing the asbestos when it was sawed. The Plaintiffs also argue that at the very least, Hopeman aided and abetted the manufacturers of Marinite and Micarta in the commission of a tort action against the plaintiffs. Then, the Plaintiffs goes on to make much ado about Hopeman and Wayne Manufacturing as joint tortfeasors. D.W. Jones v. Collier, 372 So.2d 288 (Miss. 1979). Specifically, the Plaintiffs claim that Hopeman and Wayne Manufacturing had superior knowledge with respect to the hazardous nature of the products manufactured by Wayne and sold by Hopeman. Therefore, the Plaintiffs argue, Hopeman and Wayne Manufacturing shared the duty to warn the Plaintiffs about those hazards. Wilson v. Giordano Insurance Agency, Inc., 475 So.2d 414, 417 (Miss. 1985); D.W. Jones v. Collier, 372 So.2d 288 (Miss. 1979).
Hopeman contends that there is no evidence which would allow a reasonable jury to find that it was negligent. Hopeman argues that it did not warn the Plaintiffs about the dangers of asbestos because it did not know of them until the 1960's. Hopeman asserts that when it became aware of the hazards of asbestos, immediate action was taken to eliminate the dust. Furthermore, Hopeman argues it had no reason to know of the dangers of asbestos since the dangers of inhaling asbestos dust would not have been apparent upon a reasonable inspection. Hopeman also contends that Wayne Manufacturing was dismissed as a party to this suit by the trial court, a point to which the Plaintiffs do not appeal. Hopeman further argues that the Plaintiffs have not only failed to raise on appeal any type of "joint tortfeasors" theory, but there was no such theory advanced below.
The Plaintiffs' contention is meritless. First, any reference to Wayne Manufacturing is disregarded by this Court. Wayne Manufacturing is not a party to this suit and the joint tortfeasor theory upon which the Plaintiffs claim recovery is being advanced for the first time on appeal. This Court has held that it will not consider theories of recovery advanced for the first time on appeal. Crowe v. Smith, 603 So.2d 301, 305 (Miss. 1992); Howard v. State, 507 So.2d 58, 63 (Miss. 1987).
Second, the Plaintiffs' argument assumes that Hopeman is the manufacturer or seller of the asbestos. As a manufacturer or seller, it is very true that Hopeman would have had a duty, as a matter of law, to warn of any known hazards. Swan v. I.P., Inc., 613 So.2d 846 (Miss. 1993). However, as previously indicated, we conclude that Hopeman is not a seller or a manufacturer.
The record indicates the following facts: (1) that Hopeman was regarded as a safety conscious company; (2) that Hopeman was unaware of the hazards of asbestos until the late 1960's; (3) that upon learning of the hazards of asbestos, Hopeman took extreme measures to eliminate the dust caused by the sawing of the Marinite and Micarta; (4) that Hopeman only dealt with what was considered the most reputable asbestos companies in the industry; (5) that there was no indication from within the industry as to the dangers of inhaling asbestos.
There is absolutely no evidence in the record which suggest that Hopeman knew of hazards inherent of inhaling the asbestos, prior to the late 1960's. When Hopeman did learn of the dangers, Hopeman took immediate action to eliminate the dust. Nor is there evidence to support a finding that Hopeman should have known about the hazards of inhaling asbestos. It does not appear that Hopeman was in the business of manufacturing or selling asbestos-containing products; nor is there any evidence in the record which suggests that there were any industry publications which warned of the dangers, prior to the late 1960's, which is when Hopeman took action.

*647 III.
We hold that Hopeman was neither a manufacturer or seller of Marinite and Micarta panels and is, therefore, not strictly liable under Section 402A of the Restatement (Second) of Torts. Furthermore, we hold that there is no evidence to support a jury verdict that Hopeman was negligent in its failure to warn of the hazards of asbestos. Accordingly, we affirm the judgment of the circuit court.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, J.
McRAE, Justice, dissenting:
If Ingalls Shipyard Corporation is in the business of manufacturing ships, then Hopeman Brothers' activity was an integral part of the manufacturing process. The facts reveal that Hopeman Brothers was the party responsible for procuring and assembling the defective materials into the finished product. As an independent contractor involved in the process of building ships, Hopeman Brothers qualifies as a manufacturer under our law of strict liability.
By incorporating defective components into a finished product, a manufacturer is deemed a seller of the defective component as contemplated by § 402A of the Restatement (Second) of Torts. See Coca Cola Bottling Co. v. Reeves, 486 So.2d 374, 378 (Miss. 1986) ("one who sells or distributes as his own a product manufactured by another is subject to liability the same as though he were its manufacturer"); see also Ford Motor Co. v. Mathis, 322 F.2d 267, 273 (5th Cir.1963) (holding assembler of finished product liable for incorporating defective materials); Baughman v. General Motors Corp., 627 F. Supp. 871 (D.S.C. 1985) (assembler who incorporates defective component into finished product and places finished product into stream of commerce is liable in tort if one is injured even if that manufacturer/assembler did not manufacture the component part). In State Stove Mfg. Co. v. Hodges, 189 So.2d 113 (Miss. 1966), the contractor who constructed a mobile home and installed a water heater in it was held strictly liable in tort after the heater malfunctioned and destroyed the house. 189 So.2d at 123-24. This Court concluded that the contractor "sold" the product as contemplated by § 402A by installing the heater in the house during construction. Id. It follows that Hopeman Brothers should be liable for the unreasonably dangerous finished product in the present case since it was the party responsible for procuring and incorporating the Micarta wall covering into the construction of the ships.
To hold otherwise subjects two equally culpable corporations to different and unequal standards of care. The corporation directly responsible for the attachment of the defective materials is permitted to operate under the lower standard. Ingalls is required to prove a case of negligence against Hopeman Brothers before being entitled to any recourse while, at the same time, Ingalls will be subjected to strict liability claims even though it was not directly responsible for the portion of the manufacturing process which incorporated the defective materials. The production of unreasonably dangerous products would be better deterred if the independent contractor who purchased and incorporated the defective materials was held to the same strict liability standard.
The cases supporting the majority's position stand for the proposition that a seller must be in the business of selling the products in issue before he may be subjected to strict liability. The particular facts of this case clearly show that Hopeman Brothers was in the business of selling Micarta through its manufacturing role. It sold so much through its subcontracting installation business that the materials were obtained from a subsidiary corporation. The price of the materials was an integral part of the contract price with Ingalls. Hopeman Brothers admitted that there was only a minimal amount of labor required for assembling these materials into the finished product. Therefore, the bulk of its manufacturing activity consisted of supplying the interior of the ships with the asbestos product.
*648 The trial court erroneously granted the directed verdict to Hopeman Brothers since it qualified as a manufacturer and seller under § 402A of the Restatement (Second) of Torts. Even so, the directed verdict was erroneously granted since the plaintiff established a prima facie case of strict liability under the law of this state. The plaintiff is required to prove three elements in order to establish a prima facie case of strict liability: 1) the plaintiff was injured by the product, 2) the injury resulted from a product defect which rendered it unreasonably dangerous, and 3) the defect existed when the product left the manufacturer. Early-Gary, Inc. v. Walters, 294 So.2d 181, 186 (Miss. 1974). The plaintiff has never been directed to put on proof that a defendant is in the business of selling certain products in order to establish a prima facie case. It was the defendant's burden to prove that he was not in the business of selling a certain product. Consequently, the trial court's failure to submit the case to the jury by granting a directed verdict was erroneous. This case should be reversed and remanded for a new trial on the merits. Accordingly, I dissent.
SULLIVAN, J., joins this opinion.