JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Earl M. Jones, appeals the trial court granting summary judgment to defendant-appellee, Tasco Insulations, Inc. fka The Asbestos Service Company ("Tasco"). For the reasons that follow, we agree with plaintiff.
 {¶ 2} From March 1959 until June 1999, plaintiff was employed by Republic Steel at its Warren, Ohio facility. Over the years, plaintiff performed jobs throughout the plant in different capacities. Evidence establishes that, intermittently during plaintiff's employment, Tasco sold, delivered, and installed various asbestos-containing products at the Republic facility.
 {¶ 3} Frank Gross, a truck driver for Tasco, testified during deposition that he made approximately one hundred deliveries to the Warren plant between 1953 and 1957. Gross identified some of the asbestos-containing products he delivered there, including pipe covering,[1] block, cement, cloth, and paper. Gross stated that the deliveries were made to one of two places depending on whether Republic had purchased asbestos-containing products for its own use or whether the product was for an installation job Tasco had been hired to perform at the plant. Gross stated, "[e]ither [Republic] bought it or we used it as a job."
 {¶ 4} If Republic purchased Tasco products for its own employees to use/install, Gross delivered those products to Republic's own storeroom. When he delivered "the insulation pipe covering and block" directly to the plant storeroom, he had his "order sheet signed * * *." Other times, when the products were going to be used on an installation job Tasco had at the plant, Gross delivered those materials to Tasco's designated job site at the plant.
 {¶ 5} Exhibit K, attached to plaintiff's brief in opposition to Tasco's motion for summary judgment, contains numerous invoices, dated for the years from 1955 through 1962 and from 1966 through 1971. Most of the invoices are for large quantities of Kaylo pipe insulation manufactured by Owens-Corning and sold to Tasco.
 {¶ 6} One of plaintiff's co-workers, Joseph Gilford, stated he first met plaintiff in 1961. At that time, plaintiff was working in the combination mill, next door to the pickle house in the same building. Later in his deposition, Gilford stated that he had seen plaintiff working in the pickle house as well. Gilford testified that Tasco was supplying pipe covering to the plant on a monthly basis from 1961 through to 1965. He saw the word asbestos on the pipe-covering supplied by Tasco. He stated that Tasco's product was used/installed by Republic's own employees/millwrights to wrap "pipes in the pickle house * * *." Gilford stated plaintiff worked with pipe wrapping that contained asbestos and that Owens-Corning made.
 {¶ 7} According to Donald Harrison, past-president of Tasco, The Asbestos Service Company changed its name to Tasco on August 15, 1979. In an affidavit, Harrison states he worked for The Asbestos Service Company and then Tasco from 1969 to the end of 2000. Harrison says that at no time during his years with the company did it ever manufacture, sell, provide or install any of the asbestos products plaintiff claims caused his illness. He does, however, confirm that the company made deliveries of products to the Republic plant in the "`50's through the `80's." Harrison also admitted Tasco was a member of the National Contractor's Association since the 1950's and that members knew in the 1960's that asbestos was a potential health hazard.
 {¶ 8} In 1998, plaintiff was diagnosed with asbestosis.[2]
Plaintiff filed suit against multiple parties because of his occupational exposure to asbestos and products containing asbestos.
 {¶ 9} Plaintiff sued Tasco alleging that it was strictly liable under Ohio's products liability laws set forth in R.C. 2307.71 et seq. and negligent under Ohio's common law. According to plaintiff, during his employment with Republic Steel, Tasco had supplied, installed and placed in the stream of commerce some of the products which contributed to his asbestosis.
 {¶ 10} Tasco filed a motion for summary judgment, in which it argued it could not be held strictly liable under R.C. 2307.71 et seq. nor could it be found liable under a common law theory of negligence.
 {¶ 11} The trial court agreed with Tasco and granted its motion. It is from this order that plaintiff appeals and presents two assignments of error for review.
"First Assignment of error: the trial court erred in grantingdefendant-appellee Tasco Insulations, Inc's motion for summary judgmentas to plaintiff's strict liability claims erroneously finding that TascoInsulations, Inc. is not a supplier as set forth in R.C 2307.71 et seq.(record, items 45 and 47.)"
 {¶ 12} Plaintiff claims that the trial court erred in granting Tasco's motion for summary judgment and thus deciding that it could not be held strictly liable because it was not a "supplier" as that term is defined under R.C. 2307.71(O).
 {¶ 13} Our review of the trial court's decision to grant summary judgment is de novo.Taylor v. Kemper Ins. Co., Cuyahoga App. No. 81360, 2003-Ohio-177, citing Zivich v. Mentor Soccer Club (1998),82 Ohio St.3d 367, 369-370, 696 N.E.2d 201. Civ.R. 56(C) provides that "summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." Taylor, supra at ¶ 11; Holliman v. Allstate Ins. Co., 86 Ohio St.3d 414, 1999-Ohio-116,715 N.E.2d 532; Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 65-66, 375 N.E.2d 46.
 {¶ 14} In the case at bar, plaintiff argues Tasco is a supplier under Ohio Products Liability Act ("OPLA"), R.C. §§ 2307.71-2307.80. Section 2307.78 governs product liability claims against "suppliers" of products. A supplier is defined at R.C. 2307.71(O)(l) as:
"(a) A person that, in the course of a business conducted for thepurpose, sells, distributes, leases, prepares, blends, packages, labels,or otherwise participates in the placing of a product in the stream ofcommerce;
 (b) A person that, in the course of a business conducted for thepurpose, installs, repairs, or maintains any aspect of a product thatallegedly causes harm."
 {¶ 15} Section (2) of the same statute, however, excepts the following persons or entities as suppliers:
"(a) A manufacturer;
 (b) A seller of real property;
 (c) A provider of professional services who, incidental to aprofessional transaction the essence of which is the furnishing ofjudgment, skill, or services, sells or uses a product;
 (d) Any person who acts only in a financial capacity with respect tothe sale of a product, or who leases a product under a lease arrangementin which the selection, possession, maintenance, and operation of theproduct are controlled by a person other than the lessor. (Emphasisadded.)"
 {¶ 16} It is necessary for defendants claiming to be a provider of professional services under section (2)(c) of the statute to prove, by a preponderance, that they were employed because of their professional expertise, "the essence of which is the furnishing of judgment, skill, or services * * *."
 {¶ 17} The Ohio legislature has not defined the meaning of a "provider of professional services" under this statute. The Ohio Supreme Court, however, has explained generally the nature of professional services:
"This court has not yet defined "professional services" * * *;however, we observe that the General Assembly has defined a "professionalservice" in R.C. 1785.01(A) to mean "any type of professional servicewhich may be performed only pursuant to a license, certificate, or otherlegal authorization [by] * * * certified public accountants, licensedpublic accountants, architects, attorneys, chiropractors, dentists,pharmacists, optometrists, physicians and surgeons, and practitioners oflimited branches of medicine or surgery * * *, psychologists,professional engineers, and veterinarians."
 {¶ 18} Albright v. Limbach (1988), 37 Ohio St.3d 275, at 278. InLombard v. Good Samaritan Med. Ctr., 69 Ohio St.2d 471, 433 N.E.2d 162, certiorari denied, 459 U.S. 857 (1982), the Ohio Supreme Court used the term "professional" in describing the group of persons who can be sued for malpractice.
 {¶ 19} In Allen v. Canton, (Dec. 15, 1986), Stark App. No. CA-6913, 1986 Ohio App. LEXIS 9458, the court described what attributes allow an individual to be classified as a bona fide "professional" employee for purposes of a malpractice suit. The court stated:
"By the enactment of R.C. 4111.01, the Ohio Legislature has adopted thefederal government's definitions for purposes of the Ohio Minimum FairWage Standards Act.
 The first requisite to the classification of an individual as a bonafide "professional" employee is that the work performed must be "workrequiring knowledge of an advanced type in a field of science or learningcustomarily acquired by a prolonged course of specialized intellectualinstruction and study, as distinguished from a general academic educationand from an apprenticeship, and from training in the performance ofroutine mental, manual, or physical processes * * *."29 C.F.R. § 541.3(a)(1). This definition encompasses not only thetraditional professions but also includes" those professions which have arecognized status and which are based upon the acquirement ofprofessional knowledge through prolonged study." 29 C.F.R. § 541.301.The definition requires that "the knowledge be of an advanced type.Thus, generally speaking, it must be knowledge which cannot be obtainedat the high school level * * *. Second, it must be knowledge in a fieldof science or learning. This serves to distinguish the professions fromthe mechanical arts where in some instances the knowledge is of a fairlyadvanced type, but not in a field of science or learning * * *. Therequisite knowledge, in the third place, must be customarily acquired bya prolonged course of specialized intellectual instruction and study * **." 29 C.F.R. §§ 541.302(b), (c) and (d)."
 {¶ 20} Id. at *7-*8; State v. Renalist, (May 14, 1980), Summit App. No. 9509, 1980 Ohio App. LEXIS 14272, (licensed real-estate brokers perform professional duties); Bush v. DuBos, (Feb. 12, 1976), Mahoning App. No. 75 C.A. 81, 1976 Ohio App. LEXIS 6181, at *4 ("* * * a prescription imports the exercise of some special skill attained through training with the need for judgment.")
 {¶ 21} In State v. Flahive, (1998), 127 Ohio App.3d 32, 36,711 N.E.2d 746, the dissent described what constitutes a "profession" by referring to the definition used in Black's Law Dictionary. A "profession is `[a] vocation or occupation requiring special, usually advanced, education and skill; e.g., law or medical professions.' Black's Law Dictionary (5 Ed. 1979), 1089." Id.; Tasco argues that it was a provider of professional services rather than a supplier, because "the majority of the work [it] provided to Republic Steel was that of an installer." R.C.2307.71(O)(2)(c). According to Tasco, the products it sold to Republic, some of which are reflected on the invoices included in Exhibit K, were not for purposes of resale to third-parties like Republic, but instead only "for the purposes of providing contract installations at various work sites."
 {¶ 22} This court has previously determined a defendant to be a supplier as defined by R.C. 2307.71(O)(1)(b) because it had maintained and repaired equipment located at the defendant-employer's plant.Lassiter v. Mackworth (Oct. 19, 1995), Cuyahoga App. No. 68535, 1995 Ohio App. Lexis 4609, ("Allied did not just furnish its skills and services, but, by the admission of its owner, would have installed the button. Therefore, Allied is a supplier as defined by R.C. 2307.71(O)(1)(b).") Id., at *7.
 {¶ 23} Tasco's claim to have been a professional services provider to Republic is unsubstantiated in the record before this court. First, there is no evidence that Tasco's installation of insulation products for its customers ever required any type of licensure or that its ability to perform that work was "acquired by a prolonged course of specialized intellectual instruction and study."
 {¶ 24} We interpret R.C. 2307.71(O)(2)(c)[3] to mean that the exception for professionals applies only when the sale or use of a product is "incidental to the professional services." We also observe that Tasco's services cannot be separated from Tasco's sale of its product as part of the installations it performed. In other words, each time Republic hired Tasco to do installation work, Tasco's asbestos-containing products were the products installed. The sale was not incidental to the service; it was part and parcel. The evidence shows that when Republic hired Tasco to perform installation services, Tasco installed its own products. There is also ample evidence that when Republic purchased Tasco products Republic intended to install itself, it did not use Tasco to do any installation on these product-only purchases.
 {¶ 25} We conclude, therefore, that the essence of Tasco's business was not the furnishing of judgment, skill, or services, but rather the sale of its products, and its installation services were incidental to that purpose. From the evidence, we conclude Tasco was not a provider of professional services to Republic. Nor was Tasco a supplier under R.C.2307.71(O). Gross, one of Tasco's own employees, testified he delivered to the Warren plant asbestos-containing products, including pipe covering, block, cement, cloth, and paper. He stated he made over one hundred deliveries, some of which were for products Republic had purchased for its own use. Gross would deliver these products directly to Republic and have his "order sheet signed * * *."
 {¶ 26} Gilford confirms Tasco's delivery of asbestos-containing products to Republic on a monthly basis from 1961 through to 1965. He stated that the products were used/installed by Republic's own employees/millwrights to wrap pipes.
 {¶ 27} We reject Tasco's claim that Gilford's misidentification of the color of and name on its trucks proves Gilford was not a credible witness. Witness credibility is for the trier of fact. Issues relating to witness credibility are inappropriate considerations in ruling on a motion for summary judgment. Turner v. Turner (1993), 67 Ohio St.3d 337,617 N.E.2d 1123.
 {¶ 28} As explained by Smith v. Cincinnati Gas Elec. Co.
(1991), 75 Ohio App.3d 567, 571, 600 N.E.2d 325, 328:
"When a trial court uses summary judgment to terminate litigation, itcannot assess the credibility of the witnesses or the weight of theevidence in determining if
 there is an actual need for a trial. See Perez v. Scripps-HowardBroadcasting Co. (1988), 35 Ohio St.3d 215, 218, 520 N.E.2d 198, 202;Dunville v. Physician-Care, Inc. (Aug. 23, 1989), Hamilton App. No.C-880342, unreported, 1989 WL 97445. The question is whether, with theevidence construed most favorably to the nonmoving party, the movingparty has demonstrated that no genuine issues of material fact exist, thatreasonable minds can come to but one conclusion, and that conclusion isadverse to the party opposing the motion. Norris v. Ohio Std. Oil Co.(1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615; Jackson v. AlertFire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 51-52,567 N.E.2d 1027, 1030-1032."
 {¶ 29} Id., at 571. In the case at bar, Gilford's credibility as a witness must be construed in favor of plaintiff, the non-moving party.Taylor, supra at ¶ 11.
 {¶ 30} We conclude from the evidence that Tasco, in the course of its business, sold asbestos-containing products to Republic over a span of many years. In selling these products as the primary part of its business, it participated in placing those products in the stream of commerce. Accordingly, Tasco is a supplier under R.C. 2307.71(O).
 {¶ 31} Because Tasco is a supplier, its reliance on the cases ofCincinnati Gas Electric Co. v. General Electric Co., (N.D. Ohio 1986), 656 F. Supp. 49 and Scordino v. Hopeman Bros., Inc. (Miss. 1995),662 So.2d 640 is misplaced. In Cincinnati Gas, the defendant provided architectural and design services, which the court determined were not products. The Court added, "Even if the Sargent and Lundy `design' could somehow be construed as a product for purposes of section 402A, the design was specially tailored to the Zimmer Plant and was not mass-produced." Id. at 67.
 {¶ 32} In the case at bar, Tasco bears no resemblance to the defendant in Cincinnati Gas. Moreover, the allegedly defective design services provided by the defendant in that case resulted in purely economic loss, not personal injury to a human being. Because the harm was economic loss only, the parties' remedies were defined according to the contract between them.
 {¶ 33} In the instant case, plaintiff suffered personal injuries, not economic loss. Moreover, there is no evidence in this case that the products Tasco provided to Republic were comparable to the architectural design that was the subject of the Cincinnati Gas decision.
 {¶ 34} Scordino v. Hopeman Bros., Inc. (Miss. 1995), 662 So.2d 640, cited by Tasco is also inapplicable here because the outcome in that case depended upon the court's interpretation of the term "seller" under the Restatement of Torts (Second) § 402A (1965). Scordino did not involve a products liability statute like R.C. 2307.71 et seq. Moreover,Scordino never addressed the question of whether the defendant was a supplier or a provider of professional services, which issue is central to the case at bar.
 {¶ 35} Tasco also asks this court to accept Schwan v. Acands,Inc., (Jan. 24, 2003), Portage C.P. No. 2001 CV 00129, as persuasive authority that it is a professional services provider rather than a supplier. We do not accept Schwan because that case is factually distinct from the instant case.
 {¶ 36} In Schwan, decedent was the daughter of a man who had worked for Tasco as a pipe insulator. The executor of the estate argued decedent contracted and died from mesothelioma by being exposed to her father's work clothes. The circumstances of the plaintiff's exposure in Schwan are exponentially different from those in the case at bar. From the Schwan
court's order and journal entry, which is the only record we can refer to, there is no evidence, unlike the case at bar, that defendant engaged in product-only sales to its customers. Schwan, therefore, is not controlling here.
 {¶ 37} For the foregoing reasons, plaintiff's first assignment of error is sustained.
"Second Assignment of error: the trial court erred in grantingdefendant-appellee Tasco Insulations, Inc's motion to reconsider motionfor summary judgment as to plaintiff's negligence claims erroneouslyfinding that Tasco Insulations Inc. had no duty to warn. (Record, Items45 and 47.)"
 {¶ 38} Plaintiff argues the trial court erred in determining that Tasco had no duty to warn. Under common law negligence, plaintiff argues, Tasco should have warned him about the dangers of asbestos.[4]
 {¶ 39} In Ohio, "in order to recover in an action for products liability based upon negligence, a plaintiff must show that the defendant owed him a duty, that the duty was breached and that the injury proximately resulted from the breach." Freas v. Prater Constr. Corp.,Inc. (1991), 60 Ohio St.3d 6, 573 N.E.2d 27; Jeffers v. Olexo, (1989),43 Ohio St.3d 140, 539 N.E.2d 614, 616; Menifee v. Ohio WeldingProducts, Inc., (1984), 15 Ohio St.3d 75, 472 N.E.2d 707, 710.
"As noted in Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 325[4 O.O.3d 466], "* * * the rule imposing obligation on the manufactureror seller to give suitable warning of a dangerous propensity of a productis a rule fixing a standard of care, and any tort resulting from thefailure to meet this duty is, in essence, a negligent act." See, also,Prosser on Torts (4th Ed.), Section 96. Hence, a supplier is subject toliability for the damages proximately caused by the use of his product,in the manner and for the purpose for which it was supplied, if he failsto exercise reasonable care to give the user information which he has andwhich he should realize would be necessary to make the use of the productsafe."
 {¶ 40} Therefore, the court concluded:
"[A] supplier is subject to liability for the damages proximatelycaused by the use of his product, in the manner and for the purpose forwhich it was supplied, if he fails to exercise reasonable care to givethe user information which he has and which he should realize would benecessary to make the use of the product safe."
 {¶ 41} Hargis v. Doe (1981), 3 Ohio App.3d 36, 37, 443 N.E.2d 1008
(citing RESTATEMENT (SECOND) OF TORTS § 388);[5] Adkins v. GAFCorp., (6th Cir. Ohio 1991), 923 F.2d 1225; Miles v. Kohli KaliherAssoc., Ltd., (6th Cir. Ohio 1990), 917 F.2d 235.
 {¶ 42} In the case at bar, plaintiff has presented facts sufficient to defeat Tasco's motion for summary judgment on its failure to exercise reasonable care in warning him of the dangers inherent in the asbestos-containing products it supplied to Republic.
 {¶ 43} The record shows that Harrison, one of Tasco's past-presidents, worked for the company from 1969 to the end of 2000. He acknowledges the company made deliveries of its products to the Republic plant in the "`50's through the `80's." That the products delivered contained asbestos is confirmed by Gross and Gilford.
 {¶ 44} According to Harrison, Tasco was a member of the National Contractor's Association since the 1950's and members knew "there was a potential correlation between asbestos and cancer" in the late 1960's through the company's membership in that organization. Even though he knew asbestos was a health hazard by 1970, Harrison admits he never said anything about it to the Tasco workforce or any of his customers.
 {¶ 45} We may infer, therefore, that Tasco either knew or ought to have known that its customers, including Republic, were unaware of the risks of potential harm associated with its asbestos-containing products. On these facts, we conclude Tasco had a duty to warn Republic. Accordingly, the trial court erred in determining that Tasco had no duty to warn Republic. Because the trial court never reached the remaining issues of breach, causation and damages, we do not either. Plaintiff's second assignment of error is sustained.
 {¶ 46} This case is reversed and remanded for proceedings consistent with this opinion.
 {¶ 47} Judgment accordingly.
 {¶ 48} This cause is reversed.
It is, therefore, ordered that appellant recover of appellees his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kenneth A. Rocco, A.J., and Patricia A. Blackmon, J., concur.
[1] Gross recalled delivering two different brands of pipe covering: either Owens-Corning or Johns-Manville.
[2] Asbestosis is a medical condition defined as a scarring of the lungs from exposure to asbestos.
[3] The exception in (C) reads: "A provider of professional services who, incidental to a professional transaction the essence of which is the furnishing of judgment, skill, or services, sells or uses a product * * *."
[4] Tasco argues that it had no duty to warn plaintiff under R.C2307.78(B), because it cannot be deemed a manufacturer under the statute. We need not address this argument, because the trial court found that Tasco was not a supplier and thus it never reached the issue of Tasco's possible liability as a manufacturer under the statute. Because we have already determined the trial court erred in not finding Tasco to be a supplier under R.C. 2307.71(O), we need not address its status as a manufacturer.
[5] Restatement (Second) of Torts § 388 provides as follows:
{¶ a} One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
{¶ b} knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
{¶ c} has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
{¶ d} fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.