{¶ 40} While I concur with the majority in its assessment of the first and second assignments of error, I respectfully dissent as to the remaining assignments. Specifically, I would reverse the trial court's grant of summary judgment as to all defendants and remand for further proceedings.
 {¶ 41} The trial court concluded that appellees Waschpusch, Brunello, Ipsers and RPM did not meet the definition under R.C.2307.01 of "manufacturer" or "supplier" and, therefore, could not be held liable, individually or otherwise, for appellant's injuries.
 {¶ 42} Waschpusch and Brunello testified that they were not in the business of producing custom cycles and that the assembly of the cycle in question was only a hobby. However, appellee Waschpusch also states that he contracted with C D Custom Cycles, aka Carl Brunello, to build the custom motorcycle in question. There is evidence that Sundance, which is clearly a "manufacturer" under the applicable statute, sold the rolling chassis portion of the motorcycle to "C D Custom Cycles," not to Rolf Waschpusch, even though there was testimony that Waschpusch was the actual owner of the cycle. Brunello states that his operation was not a "business," but he, at some point, printed business cards and held himself out to be a custom motorcycle builder.
 {¶ 43} RPM is in the business of repairing and building motorcycles, and the parties do not dispute that RPM performed repairs on the motorcycle in question. R.C. 2307.71(O)(1)(b) defines "supplier" as "a person that, in the course of a business conducted for the purpose * * * repairs * * * any aspect of a product that allegedly causes harm," yet the trial court concluded that RPM should be protected from liability pursuant to R.C. 2307.71(O)(2)(c), which states that a provider of "professional services, incidental to a professional transaction" cannot be considered a "supplier." The evidence presented, however, clearly characterizes RPM as a motorcycle repair shop, which performed repairs on the motorcycle in question. While the legislature has not defined "professional service" relative to this statute, it has generally been held that a "profession is `[a] vocation or occupation requiring special, usually advanced, education and skill; e.g., law or medical professions.' Black's Law Dictionary (5 Ed. 1979), 1089." Jones v. A-Best ProductsCo., Cuyahoga App. No. 81792 at 21, 2003-Ohio-6612. Robert Ipser and RPM were not involved in this case to provide "professional services," but to repair and sell the motorcycle in accordance with their regular business.
 {¶ 44} Moreover, the trial court's own journal entries create a significant factual conflict. The trial court, in addressing the motion for summary judgment filed by Brunello, states that "the undisputed fact is that the subject motorcycle was defective in the frame and/or neck area, [and that] Brunello was not involved in the assembly of the motorcycle with respect to the frame and/or neck." Yet, in the journal entry pertaining to the motion for summary judgment filed by Sundance, the court states, "Plaintiff Sheppard has failed to prove that there was a defect in the motorcycle frame as sold by Sundance, [and] * * * allegations that the motorcycle frame was altered after leaving Sundance's possession breaks the causal chain, and relieves Sundance of liability."
 {¶ 45} The court further states that "defendants RPM and Ipser did not manufacture, design, or own the motorcycle in question, nor did they engage in the course of a business conducted for the purpose of manufacturing or selling motorcycles." Yet there is testimony from more than one witness and documentary evidence that Robert Ipser is a "professional bike builder" and that appellant returned time and again to RPM for repairs and modifications to the motorcycle in question. See R.C. 2307.72(O)(1)(b). Because of RPM's substantial involvement in the construction of the motorcycle, exception 2107.72(2)(c) cannot be properly applied, as discussed above.
 {¶ 46} Viewing the evidence in the light most favorable to the appellant, and taking into consideration the plethora of conflicting testimony and other evidence in this case, there exist genuine issues of material fact as to whether Waschpusch, Brunello and RPM should be considered manufacturers or suppliers under the product liability statute. Reasonable minds could clearly come to more than one conclusion in this matter.
 {¶ 47} I would also sustain appellant's argument that RPM/Ipser, Waschpusch and Brunello/CD Custom Cycles are exposed to liability under Ohio's supplier liability statute.
 {¶ 48} The conflicting findings of the trial court highlight the questions of fact that remain in this case — that is, whether the motorcycle frame was defective when it was manufactured, whether the alterations done on the frame after it was delivered to Waschpusch and Brunello were the cause of the failure, or whether RPM's repairs resulted in the frame defect. There are genuine issues of material fact with respect to the construction and design of the motorcycle, and reasonable minds could conclude that RPM, Waschpusch and Brunello may be held liable as manufacturers and/or suppliers pursuant to R.C. 2307.78(A); thus, the trial court erred in granting summary judgment.
 {¶ 49} Ohio's Lemon Law is a remedial "consumer protection statute which should be liberally construed in favor of the consumer." LaBonte v. Ford Motor Co. (Oct. 7, 1999), Cuyahoga App. No. 74855, at 12, quoting General Motors Acceptance Corp.v. Hollinshead (1995), 105 Ohio App.3d 17, 22, 663 N.E.2d 663. Appellant also argues that RPM, Brunello and Waschpusch are liable for breach of warranty under Ohio's "Lemon Law," R.C.1345.71, et seq. RPM, Brunello and Waschpusch argue that they do not fit the definitions of "manufacturer" and/or "distributor" pursuant to these sections. For purposes of the Lemon Law, "manufacturer" is defined as "a person who manufactures, assembles, or imports motor vehicles, including motor homes, but does not mean a person who only assembles or installs a body, special equipment unit, finishing trim, or accessories on a motor vehicle chassis supplied by a manufacturer or distributor." R.C.4517.01(R). "Distributor" means "any person authorized by a motor vehicle manufacturer to distribute new motor vehicles to licensed new motor vehicle dealers, but does not mean a person who only assembles or installs a body, special equipment unit, finishing trim, or accessories on a motor vehicle chassis supplied by a manufacturer or distributor." R.C. 4517.01(T).
 {¶ 50} While there is dispute as to the roles of Brunello, Waschpusch and RPM in assembling and marketing the motorcycle, there is no question that Sundance was the manufacturer of the frame and that the ancillary parts were assembled by the other appellees; RPM, Waschpusch and Brunello consequently do not qualify as manufacturers or distributors under either of the above-referenced definitions. Therefore, the trial court did not err in finding that they could not be held liable under R.C.1345.71, et seq. However, the inapplicability of R.C. 1345.71
does not relieve any of the appellees from liability under R.C.1302.26, et seq. Appellant asserts causes of action on express and implied warranties of merchantability. An express warranty is created where the seller makes any affirmation of fact or promise to the buyer which relates to the goods and becomes part of the basis of the bargain. R.C. 1302.26 (A)(1). Implied warranties arise when seller is a merchant with respect to goods of that kind. R.C. 1302.27. "Merchant" means a person who deals in goods of the kind or otherwise by the person's occupation holds the person out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by the person's employment of an agent or broker or other intermediary who by the agent's, broker's, or other intermediary's occupation holds the person out as having such knowledge or skill. R.C. 1302.01(A)(4). While the Ohio Products Liability Law preempts warranty claims under this section, Nadel v. Burger King Corp. (1997),119 Ohio App.3d 578, the same questions of material fact exist with respect to this claim as they do as discussed above, rendering summary judgment improper.
 {¶ 51} Therefore, I would sustain appellant's first, third, fourth and fifth assignments of error.